619 So.2d 900 (1993)
Kenneth Ray CHURCHILL, Jr.
v.
PEARL RIVER BASIN DEVELOPMENT DISTRICT, a Corporate Political Subdivision of the State of Mississippi, Pike County, Mississippi, a Political Subdivision of the State of Mississippi.
No. 07-CA-59194.
Supreme Court of Mississippi.
February 25, 1993.
Rehearing Denied June 24, 1993.
*901 Alfred L. Felder, McComb, Donald R. Rogers, Hattiesburg, for appellant.
John B. Clark, Wilton V. Byars III, Daniel Coker Horton & Bell, Jonathan B. Fairbank, Cupit Jones & Fairbank, Jennifer Lynn Welsh, Dove Chill & McNamara, Jackson, Wayne Dowdy, Magnolia, Mike Smith, McComb, for appellee.
EN BANC.
McRAE, Justice, for the Court:
This appeal arises from an April 14, 1988, order of the Pike County Circuit Court granting the Appellees' motions for summary judgment on the basis of sovereign immunity on claims of negligence, strict liability in tort and breach of implied contract. Finding that Churchill's charge of breach of implied contract, which he sought to propound in his motion for leave to amend the complaint, was not precluded by the sovereign immunity defense and that sovereign immunity is waived to the extent that the governmental entity is covered by liability insurance, we reverse and remand for a trial consistent with this opinion.

PROCEDURAL HISTORY
On August 1, 1981, while using the recreational facilities of the Bogue Chitto Water Park, which was developed by the Pearl River Basin Development District (hereinafter "the District") and maintained by Pike County (hereinafter "the County"), Kenneth Ray Churchill, Jr., sustained serious injuries which left him permanently paralyzed. On June 26, 1987, Churchill filed a complaint in the Circuit Court of Pike County against the District and the County, seeking recovery for compensatory and exemplary damages on the basis of negligence and strict liability in tort. He later filed a motion for leave to amend his complaint, asserting that the District and the County breached their implied contract with him to provide a safe place for the activities for which he had paid an admission fee.
The defendants filed motions for summary judgment, raising the defense of sovereign immunity, the District claiming it was entitled to dismissal because Miss. Code Ann. § 51-11-3 (1972) makes it an "agency of the state and a body politic and corporate;" and the County because of the exemption from liability granted to governmental entities by Miss. Code Ann. § 11-46-9 (1972). Because the District carried liability insurance, Churchill then filed a motion to estop the District from asserting the defense of sovereign immunity.
Citing Strait v. Pat Harrison Waterway District, 523 So.2d 36 (Miss. 1988), the Circuit Court found that neither the breach of implied contract which Churchill attempted to raise nor his plea of estoppel would avail him. Accordingly, motions for summary judgment filed by the District and the County were granted.

FACTS
Churchill, as a part of a group, paid an admission fee to the Bogue Chitto Water Park and rented an inner tube. As alleged in his complaint, he "dived into the water from a man-made platform and swing and struck his head against the bottom of said river." In so doing, he suffered severe injuries to his "spine, spinal cord and nervous system," and was rendered a quadriplegic, permanently and totally disabling him.
The Bogue Chitto Water Park was designed and constructed by the District, pursuant to the authority vested in it by Miss. Code Ann. §§ 51-11-31, et seq. (1972). Although the Park was subject to oversight, supervision, expansion, renovation and inspection by the District, the District had no involvement with the daily operation and management of the facilities. The Park was maintained and operated by the Pike County Board of Supervisors between 1974 *902 and 1987, which retained all admission and equipment rental fees collected by its employees. The District had forwarded a copy of its "Management Program for Recreation Sites" to the County in December, 1980, and May, 1981, which recommended posting signs at the swimming area and checking the swimming area for hazardous conditions. No such signs were posted at the time of Churchill's accident.
The District carried a public liability insurance policy to cover accidents such as Churchill's. Issued by Travelers' Insurance Company, the Comprehensive General Liability Policy covered bodily injury to the extent of $500,000 for each occurrence and property damage to the extent of $250,000 for each occurrence. The District further maintained a $1,000,000 umbrella policy with Lincoln Insurance Company, giving it a total of $1.5 million liability protection. Premiums on the two policies cost approximately $5,544.00 per year. Coverage was procured by the District's Board under its general powers, because no statutory authority specifically provides it with the power to obtain liability insurance. Pike County, however, does not carry any general liability insurance for the Bogue Chitto Water Park. If any other insurance was available, it was not made a part of the record before us.

STANDARD OF REVIEW
This Court conducts a de novo review of the record on appeal from a grant of a motion for summary judgment. Pace v. Financial Security Life of Mississippi, 608 So.2d 1135 (Miss. 1992); Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63 (Miss. 1988). In Pace, this Court reiterated the initial standard to be used in considering a motion for summary judgment:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
Id. at 1138, quoting Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983) (emphasis added); See also, Lovett v. Anderson, 573 So.2d 758, 760 (Miss. 1990); Pearl River County Board v. South East Collections, 459 So.2d 783, 785 (Miss. 1984).

CHURCHILL'S BREACH OF IMPLIED CONTRACT CLAIM
In his motion for leave to amend, Churchill sought to raise the theory of breach of implied contract, alluded to in Strait v. Pat Harrison Waterways District, 523 So.2d 36 (Miss. 1988). He charged that his injuries resulted from a breach of an implied contract to provide a safe place for the activities for which he had paid an admission fee. Although some courts have held that an admission ticket merely grants the holder a license to use the facility for which a fee has been paid, Churchill cites the Alabama Supreme Court's decision in Sims v. Etowah County Board of Education, 337 So.2d 1310 (Ala. 1976), for the proposition that
a ticket to a place of public entertainment constitutes a contract between the proprietor and the purchaser of the ticket; whatever contractual duties grow out of that relation, it has been held, must be performed by the proprietor or he must respond in damages for breach of contract.
Id. at 1314. See also, Walker v. City of Birmingham, 342 So.2d 321, 322 (Ala. 1977).
Thus, in an action brought for injuries sustained when a bleacher collapsed during a high school football game for which Mr. and Mrs. Sims had purchased admission tickets, the Alabama Court found that the trial judge had properly dismissed the negligence counts but erred in dismissing the plaintiff's breach of implied contract claim. Analyzing the contract claim, the Court stated:
What we have here is a unilateral contract, with the promisor-board of education *903 as proprietor, upon receiving the admission price, promising admission by ticket and the performance of all other contractual duties arising from the circumstances, including the implied promise that the premises are reasonably safe for the purpose of viewing the athletic contest.
Sims, 337 So.2d at 1314.
Likewise, in the case sub judice, the appellees had charged Churchill's group an admission fee as well as a fee for renting an inner tube. The receipt of that fee promised not only admission to the water park, but also carried with it the implied promise that the premises were safe for the enjoyment of water sports. Accordingly, we find that there existed an implied contract between the appellees and those who paid an admission fee to use the water park facility.
Sovereign immunity does not bar actions against the state or its political subdivisions brought on a breach of contract theory. Miss. State Department of Welfare v. Howie, 449 So.2d 772 (Miss. 1984); Cig Contractors v. Miss. State Bldg. Comm'n, 399 So.2d 1352 (Miss. 1981). As we stated in Cig Contractors:
The general rule is that when the legislature authorizes the State's entry into a contract, the State necessarily waives its immunity from suit for a breach of such contract. 81A C.J.S. States § 172 (1977). Where the state has lawfully entered into a business contract with an individual, the obligations and duties of the contract should be mutually binding and reciprocal. There is no mutuality or fairness where a state or county can enter into an advantageous contract and accept its benefits but refuse to perform its obligations.
Id. at 1355.
The legislature has vested the District with the power to enter into contracts in Miss. Code Ann. § 51-11-11(g) (1972). Likewise, § 51-11-11(b) empowers the District to sue and be sued. Section 51-11-43, which authorizes the District to act jointly with other governmental agencies further states, in relevant part:
The several counties, municipalities, districts, political subdivisions, public agencies, commissions and instrumentalities of this state are authorized and empowered to enter into contracts and joint funding agreements with the district in the performance of the purposes and services authorized in this chapter and for the planning, construction, operation and maintenance of projects approved by the district, including but not limited to flood control projects, parks and recreational projects of the district.
Although the County is not afforded express statutory power to sue and be sued with regard to any contracts or agreements entered into with the District, a contract claim raised against it should be actionable. Howie, 449 So.2d at 776-777. Accordingly, we find that Churchill had a viable claim in contract against both the District and the County which was not barred by the doctrine of sovereign immunity.

CHURCHILL'S NEGLIGENCE AND STRICT LIABILITY CLAIMS
In his initial complaint, Churchill raised the theories of negligence and strict liability in tort. He argued that both Pearl River Basin Development District and Pike County were liable for the "dangerous and defective" condition of the river. Both the District and County asserted the defense of sovereign immunity. The Circuit Court judge entered summary judgment for both entities, holding that neither had waived sovereign immunity. At the time Churchill filed his complaint, Mississippi Code § 11-46-6 (Supp. 1987) read:
Section 4. This act, being Chapter 495, Laws of 1984, as reenacted and amended by Chapter 474, Laws of 1985, as amended by Senate Bill No. 2166, 1986 Regular Session, shall apply only to causes of action that accrue on or after July 1, 1987, as to the state, and on or after October 1, 1987, as to political subdivisions. Causes of action that accrue prior to July 1, 1987, as to the state or, prior to October 1, 1987 as to political subdivisions, shall not be affected by this act but shall continue to be governed by *904 the case law governing sovereign immunity as it existed immediately prior to the decision in the case of Pruett v. City of Rosedale, 421 So.2d 1046, and by the statutory law governing sovereign immunity in effect from and after the passage of Chapter 474, Laws of 1985.
This statute, having been enacted after Churchill's August 1, 1981, injury, is not applicable. Moreover, in Presley v. Mississippi State Highway Commission, 608 So.2d 1288 (Miss. 1992), we found § 11-46-6 to be unconstitutional.
Further, because the injury occurred prior to our decision in Pruett, we apply sovereign immunity case law prior to Pruett. However, we must first address the status § 11-46-6, following this Court's decision in Presley.
In Presley, Part I, this Court held Miss. Code Ann. § 11-46-6 unconstitutional. That section of the opinion received votes from a majority of the full Court. Part II of the opinion holds that the statute is unconstitutional prospectively only. However, Part II of the opinion only received a plurality vote of four justices. Of the remaining five votes, three justices concurred with Part I, but dissented from Part II, writing the holding should not be purely prospective. Two justices wrote that the statute was not unconstitutional.
In Lakewood v. Plain Dealer, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), the U.S. Supreme Court observed that it is settled jurisprudence that "when no single rationale commands a majority, `the holding of the Court may be viewed as that position taken by those members who concurred in the judgmen[t] on the narrowest grounds.' Marks v. United States, 430 U.S. 188, 51 L.Ed.2d 260, 97 S.Ct. 990 (1977)." 486 U.S. at 764, 108 S.Ct. at 2148, 100 L.Ed.2d at 787, n. 9. It has been noted that normally a majority vote of all sitting judges is required to create precedent:
Constitutional or statutory provisions requiring that a designated number of judges shall concur in an opinion in order that there may be a valid and binding adjudication by the court, or in order that a statute be declared unconstitutional, must be complied with. The general rule, however, unless the law provides otherwise, is that a concurrence of a majority of the judges sitting is necessary or sufficient although those concurring are not a majority of all the judges of the court.
Where the necessary number have concurred in an opinion, the decision rendered is the decision of the court, at least on the points as to which the required number have concurred, although not on points as to which fewer have concurred. A change in the personnel will not warrant a reopening of the controversy unless the court itself orders a reargument.
21 C.J.S. Courts § 138 (1990). In Dean v. State, 173 Miss. 254, 162 So. 155 (1935) this Court[1] held:
When this court is sitting in [sic] banc, there must be at least four of its judges present; and no action can be taken by it unless a majority of the judges present concur therein. When a cause is brought to the court on appeal, the judgment of the trial court is presumed to be correct and must remain in effect unless and until the court enters an order on its minutes reversing or setting it aside. This can be done only when a majority of the judges participating in the decision concur therein. ...
Dean, 162 So. at 157 (emphasis added).
Thus, it is a logical conclusion for this Court to recognize that a plurality vote does not create a binding result. The narrowest holding in Presley, in which a majority of the sitting justices concurred, was that Miss. Code Ann. § 11-46-6 is unconstitutional. As there is no majority vote for Part II, we can only note that it has no precedential value.
It is our holding in Pruett that will determine the outcome of this particular issue. In Pruett, we abolished judicially-created sovereign immunity, but made the action prospective, except as to Pruett. Id. at 1052. The opinion only applied to actions *905 which accrued on or after July 1, 1984. Id. In the case sub judice, Churchill was injured on August 1, 1981, thus the prospective holding in Pruett ostensibly protects both the District and the County from tort liability. See Jagnandan v. Mississippi State University, 373 So.2d 252 (Miss. 1979), cert. denied 444 U.S. 1026, 100 S.Ct. 690, 62 L.Ed.2d 660, reh'g denied, 448 U.S. 914, 101 S.Ct. 34, 65 L.Ed.2d 1177 (1980); Rolph v. Board of Trustees of Forrest County General Hospital, 346 So.2d 377 (Miss. 1977); and Berry v. Hinds County, 344 So.2d 146 (Miss. 1977) (all overruled prospectively from July 1, 1984, by Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982)).
Churchill, however, argues that the District should be estopped from asserting its defense of sovereign immunity because it had purchased public liability insurance in the amount $1.5 million. This insurance was purchased under the general powers of the District, because no statutory authority specifically provided it the power to obtain liability insurance.
In French v. Pearl River Valley Water Supply District, 394 So.2d 1385 (Miss. 1981), we held that the mere purchase of liability protection by a governmental body does not waive sovereign immunity. Id. at 1388. In Joseph v. Tennessee Partners, Inc., 501 So.2d 371 (Miss. 1987), we further stated that a governmental body does not give up its protection of sovereign immunity "simply because it has obtained liability insurance without express statutory authority." Id. at 375. As we noted in Strait, "In both French and Joseph, there was no statutory authority for the governmental entities' purchase of insurance and no statutory implication that the legislature intended sovereign immunity to be waived." 523 So.2d at 39.[2]
We find that French and its progeny perpetuate the ill-advised policy of eschewing the notion that an insurance company is accountable for that which it has been paid a premium. Thus, we overrule French and hold that the Pearl River Basin Development District is amenable to suit to the extent of coverage of any available liability policy or indemnification plan.
In his brief, but well-reasoned, dissent in French, former Chief Justice Patterson set out the question and, in our view, the correct answer quite succinctly:
[An] issue is presented in this case of sovereign immunity and that is whether a public entity may purchase liability insurance with public funds, the use and expenditure of such funds being subject to legislative approval, and thereafter interpose a defense of sovereign immunity to protect the insurance carrier? I think not. The case of Thomas v. Broadlands Community Consolidated School District, 348 Ill. App. 567, 109 N.E.2d 636 (1952) presents the better and more practical reasoning for the resolution of this issue. In my judgment the insurance, to the extent that it protects the public funds removes the reason for immunity from suit.
394 So.2d at 1388 (Patterson, C.J., Dissenting).
In Thomas, a minor brought a negligence suit against a school district after the minor, a student, lost an eye during recess. Thomas v. Broadlands Community Consolidated District, 348 Ill. App. 567, 109 N.E.2d 636, 637 (1952). The school district raised sovereign immunity as a defense. Id. The Illinois Appellate Court held that, where a political subdivision has insured itself from tort liability, no justification exists for insulating the insurance carrier from a claim under the doctrine of sovereign immunity. Id., 109 N.E.2d at 640-41. "Liability insurance, to the extent that it protects the public funds, removes the reason for, and thus immunity to, suit." Id.
*906 Waiver of immunity in light of insurance coverage has been upheld by appellate courts in other states as well. Howard v. Village of Chisholm, 191 Minn. 245, 253 N.W. 766, 767 (1934) (village could have raised sovereign immunity defense but elected not to in light of the fact that it was insured); Crowell v. School Dist. No. 7, 247 Mont. 38, 805 P.2d 522, 533-34 (1991) (state legislature intended, through enactment of statute authorizing school districts to purchase insurance, to allow school districts to waive immunity up to policy limits); Marshall v. City of Green Bay, 18 Wis.2d 496, 118 N.W.2d 715, 717 (1963) ("[t]he power of a city to waive its tort immunity need not rest upon an express grant of statutory immunity").
Strait, Joseph and French held that the mere purchase of insurance coverage, absent express statutory authority, does not constitute a waiver of sovereign immunity. Strait, 523 So.2d at 39; Joseph, 501 So.2d at 374-75; French, 394 So.2d at 1387. In particular, the French Court wrote:
Although the doctrine of sovereign immunity is of common-law origin and was first pronounced in this State by the Supreme Court, we have consistently held since that time that there can be no liability against the State or its political subdivisions or agencies unless it is expressly or impliedly created by statute. We have also held steadfast to the proposition that, although the courts have the authority to abolish the doctrine of governmental immunity, the Legislature is in a better position to limit and restrict claims that can be asserted because the Legislature must provide the ways and means for paying, by taxation or appropriation, such claims it should see fit to allow.
French, 394 So.2d at 1387.
Although written after Pruett was decided, Strait and Joseph relied on the holding in French that a political entity remains immune from suit unless a statute explicitly removes immunity from any subdivision which purchases insurance. Strait, 523 So.2d at 39-40; Joseph, 501 So.2d at 374-75. As no statutory authority stripped the governmental respondents in Strait and Joseph of immunity, even though the respondents purchased insurance, the Court held the respondents maintained their immunity. Strait, 523 So.2d at 39-40; Joseph, 501 So.2d at 375. These holdings fly in the face of Pruett, however, as they assume the existence of immunity based on a legislative failure to act rather than an affirmative statement from the legislature extending immunity to governmental subdivisions which have purchased insurance.[3]
While it is clear that Pruett operates only prospectively for purposes of the abolition of the immunity, its declaration that immunity was judicially created is but recognition of a fact. Applying that recognition to the French circumstances supports the finding of an implicit waiver of the doctrine by the authorization or purchase of insurance, thus subjecting a judicial doctrine to judicial permutations based on public policy considerations expressed or implied in legislative actions.
We find, therefore, that the trial court erred in granting summary judgment to the District and the County on Churchill's claim of breach of implied contract. We affirm the trial court's ruling on sovereign immunity on the tort claims since the injury occurred prior to our ruling in Pruett. We expressly overrule French, Strait, Joseph and their progeny, allowing Churchill to seek recovery on his tort claims to the extent of liability insurance coverage.
Accordingly, we reverse and remand for a new trial consistent with this opinion.
*907 REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., SULLIVAN and PITTMAN, JJ., concur.
BANKS, J., concurs in part with separate written opinion.
ROBERTS and SMITH, JJ., not participating according to Supreme Court Internal Rules.
BANKS, Justice, concurring in part:
I concur with all that is held by the majority. I do not join its unnecessary discussion of Miss. Code Ann. § 11-46-6 (Supp. 1992) and Presley v. Mississippi State Highway Commission, 608 So.2d 1288 (Miss. 1992). The accident here in question occurred prior to Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982). It follows, therefore, that Section 11-46-6 has no relevance whatever to this case and the treatment of that section in Presley is similarly irrelevant.
NOTES
[1] In 1935, the Mississippi Supreme Court was comprised of six (6) members.
[2] In Strait the Court found that although the governmental entity did have specific statutory authority to purchase liability insurance, the statute was silent as to waiver of sovereign immunity. Thus, the Court held, waiver was not implied and the governmental entity could avail itself of the sovereign immunity defense. Strait v. Pat Harrison Waterway District, 523 So.2d 36, 39 (Miss. 1988).
[3] Strait, in particular, takes moment to stare at this inconsistency and then proceeds to decide the issue in contra-position to Pruett. According to Strait, of the 29 statutes authorizing state subdivisions to purchase liability insurance, some expressly reserved immunity from damages even if the subdivision purchases insurance, others state immunity is waived up to the policy limits while others are silent on the liability issue. Strait, 523 So.2d at 39. The statute in Strait fell into this final category. Id. Nonetheless, relying on French and its progeny, the Strait Court concluded that a silent statute is a statute which does not waive immunity. Id. at 40.