# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01118-SCT

*MALIKAH GLOVER*

*v.*

*JACKSON STATE UNIVERSITY*,

*NATIONAL YOUTH SPORTS PROGRAM FUND, DOUGLAS LUSTER, C. H. EPPS*

*AND ACE RENTAL, INC.*


## CONSOLIDATED WITH

## NO. 97-CA-01426


*JACKSON STATE UNIVERSITY*, *NATIONAL YOUTH SPORTS PROGRAM FUND, DOUGLAS LUSTER AND C. H. EPPS*

*d/b/a ACE RENTAL SERVICE*
*v.*
*MALIKAH GLOVER, BY AND THROUGH*

*HER PARENTS AND NEXT OF KIN,*

*GREGRICK AND SANDRA GLOVER*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/1997 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT/ CROSS-APPELLEE: | |
| | CHOKWE LUMUMBA |
| | BARRY WAYNE HOWARD |
| ATTORNEYS FOR APPELLEES/ CROSS-APPELLANTS: | |
| | SAMUEL O. MORRIS, IV |
| | ROBERT A. MILLER |
| | WILLIAM BENNETT CARTER |
| | J. COLLINS WOHNER, JR. |

NATURE OF THE CASE:       CIVIL - PERSONAL INJURY

DISPOSITION:       AFFIRMED IN PART; VACATED AND REMANDED IN PART - 01/27/2000

MOTION FOR REHEARING FILED:

MANDATE ISSUED:       2/17/2000

# BEFORE PITTMAN, P.J., MILLS AND WALLER, JJ.

# WALLER, JUSTICE, FOR THE COURT:

## STATEMENT OF THE CASE

¶1. Malikah Glover, then age 14, was a participant in the 1993 National Youth Sports Program ("The NYSP") held on the campus of Jackson State University ("JSU"). C. H. Epps supplied a bus and a bus driver, Douglas Luster, to transport the children participating in the program.

¶2. On the morning of June 18, 1993, Luster picked up Glover and three other youth participants. Luster was scheduled to drop the children off at JSU's T. B. Ellis Gymnasium, but he mistakenly took them to the JSU Athletic Assembly Center ("AAC") instead. Two of the program participants, both 15 years old, raped Glover in a stairwell of the AAC. The two youths later pled guilty to the rape.

¶3. Glover filed two separate complaints against numerous defendants, including those here on appeal; those cases were consolidated by the trial court. Glover went to trial against the present defendants (suits against the other defendants having been dismissed) in August of 1996. Circuit Judge James E. Graves, Jr., declared a mistrial after approximately six days of trial and recused himself from any further proceedings in the case. Chokwe Lumumba, Glover's counsel, made an objection to one of Judge Graves' rulings in which Lumumba made derogatory remarks about the ruling and the conduct of Judge Graves. Judge Graves felt that his impartiality might be questioned because of Lumumba's remarks, and he therefore declared a mistrial. The defendants then made a joint motion to dismiss the action and/or to tax Lumumba with attorney fees and costs for the six days of trial; the defendants claimed that Lumumba deliberately provoked the court into declaring a mistrial.

¶4. The consolidated cases were reassigned to Circuit Judge L. Breland Hilburn. On November 22, 1996, Judge Hilburn dismissed the case without prejudice after Glover's counsel failed to appear for a hearing on the motion for attorney fees. Three days later, Glover filed a third complaint with virtually identical allegations as the consolidated cases that had been dismissed; this case was also assigned to Judge Hilburn. Each defendant filed a motion for summary judgment in that case.

¶5. Before Glover's third complaint was filed, Epps' liability insurance carrier, National Fire & Marine Insurance Company, filed a declaratory judgment action (Civil Action No. 3:96cv176BN) in the United States District Court for the Southern District of Mississippi, Jackson Division, against Epps d/b/a Ace Rental Service, Luster and Glover. National Fire claimed that its policy did not provide coverage to Epps

for the payment or defense of Glover's claims in state court. United States District Judge William H. Barbour, Jr., granted National Fire's motion for summary judgment, ruling that National Fire was not liable to Glover and had no duty to defend Epps and Luster in the state actions. Judge Barbour stated, "Glover has submitted no evidence that the bus driver could have foreseen that the male students on the bus would rape Glover when he transported the youths to the wrong location. In the present case, the Court finds that no jury could reasonably find that the intervening criminal act was foreseeable." ***National Fire & Marine Ins. Co. v. Epps, et al.***, No. 3:96cv176BN (S.D. Miss.), *aff'd mem.*, 127 F.3d 35 (5th Cir. 1997). After the federal court made its ruling, Epps and Luster added res judicata and/or collateral estoppel claims to their motions for summary judgment pending in state court. Judge Hilburn granted all the defendants' motions for summary judgment, from which ruling Glover appeals. Judge Hilburn denied the motion to change the dismissal of the consolidated cases to one with prejudice and/or award attorney fees, from which ruling defendants appeal. The cases were consolidated on appeal to this Court.

## STANDARD OF REVIEW

¶6. [Rule 56(c) of the Mississippi Rules of Civil Procedure](#) allows summary judgment where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. M.R.C.P. 56(c). The standard of review for granting or denying summary judgment was set out by this Court in ***Aetna Cas. & Sur. Co. v. Berry***, 669 So. 2d 56, 70 (Miss. 1996), as follows:

> The standard for reviewing the granting or the denying of summary judgment is the same standard as employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied.

## DISCUSSION

*¶7.* Glover has raised three assignments of error that each involve several issues. The Court will address only four issues that are dispositive:[(1)]

> **I. Whether the lower court committed error by granting Appellees Epps and Luster's Motion for Summary Judgment when a genuine issue of fact existed as to whether the Appellant's injury was a foreseeable consequence of their negligence.**

¶8. Epps and Luster assert that they should have been granted summary judgment in this case since the issue of their liability was "authoritatively decided on the merits" against Glover in the federal court action. Epps' insurance carrier filed a declaratory judgment action in March of 1996, almost two years after the complaints in the consolidated cases were filed. The insurance carrier sought a declaration of its liability towards its insured for damages arising out of Glover's complaints as well as its duty to defend the state court action. The consolidated state court actions were dismissed without prejudice on November 22, 1996, and Glover filed her third complaint three days later, on November 25, 1996. The defendants filed motions for summary judgment in that suit, which were still pending when Judge Barbour issued his opinion in the federal court action on February 24, 1997.

¶9. The doctrines of res judicata and collateral estoppel (also referred to as claim and issue preclusion, respectively) promote judicial economy by limiting cases or issues from being re-litigated. In *Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So. 2d 749, 751 (Miss. 1982), this Court held that there were four requirements under Mississippi law for res judicata or claim preclusion: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of the person against whom the claim is made. The Court further stated that collateral estoppel would preclude relitigation of a specific issue actually litigated, determined by, and essential to the judgment in the former action, even if the two suits involve a different cause of action. *Id.*

¶10. Glover argues that this case involves a different cause of action than the federal court case since "the theories of discovery, the operative facts, and the measure of recovery differ." *See Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1031 (5th Cir. 1991). Regardless of any finding by this Court as to the same or similar causes of action, Glover's claim does not survive the collateral estoppel or issue preclusion analysis, which does not require a finding of the same cause of action. In *Lyle Cashion Co. v. McKendrick*, 227 Miss. 894, 907, 87 So. 2d 289, 293-94 (1956), this Court stated:

> [t]he collateral estoppel aspect of res judicata finds particular application to declaratory judgments. In such suits, the plaintiff is not seeking to enforce a claim against the defendants, but rather a judicial declaration of legal relations between the parties . . . collateral estoppel . . . applies and precludes relitigating the specific issues determined by and essential to the declaratory judgment when those specific issues are sought to be again disputed in a subsequent suit.

*Accord Warwick v. Pearl River Valley Water Supply Dist.*, 271 So. 2d 94, 95-96 (Miss. 1972). In *Lyle Cashion*, the state court defendant had previously filed a declaratory judgment action in the federal district court for the Eastern District of Louisiana under diversity jurisdiction for a determination of the parties' rights under a option in an oil, gas, and mineral lease pertaining to property in Jefferson County, Mississippi. The federal district court issued a declaratory judgment that the state court plaintiff had validly exercised an option to purchase under the terms of the lease, and that judgment was affirmed in the Fifth Circuit Court of Appeals. *Lyle Cashion Co. v. McKendrick*, 97 F. Supp. 1008 (E.D. La. 1951), *aff'd*, 204 F. 2d 609 (5th Cir. 1953). After the defendant still refused to recognize plaintiff's interest in the property, the plaintiff filed suit for confirmation of title in the Jefferson County Chancery Court, which gave deference to the federal district court judgment in finding for the plaintiff. We affirmed, finding that the defendant was precluded by the doctrine of collateral estoppel from relitigating its interest in the property, even though the opinion issued from a federal court in Louisiana exercising jurisdiction over a land dispute in Mississippi.

¶11. Here, the issue in the declaratory judgment action filed in the federal district court was whether Luster and Epps were liable to Glover for her injuries arising out of the "ownership, maintenance or use of" the insured bus on which Glover was a passenger immediately before she was dropped off at the gym and raped. Specifically, Luster and Epps' insurance carrier argued that the voluntary, deliberate acts of Glover's rapists were the genuine cause of her injuries, and the use of the bus to transport her, even to the wrong location, was merely incidental. The federal court held that Glover "submitted no evidence that the bus driver should have foreseen that the male students on the bus would rape Glover when he transported the youths to the wrong location. In the present case, the Court finds that no jury could reasonably find that the intervening criminal act was foreseeable." Luster and Epps' liability to Glover was a fact essential to and determined by the federal court. It is important to note also that Glover was joined as a party in the federal

court action and had every opportunity to establish liability on the part of Luster and Epps before that court. *See Coleman v. Mississippi Farm Bureau Ins. Co.*, 708 So. 2d 6, 9-11 (Miss. 1998) (holding that res judicata would not prevent an injured party from relitigating the liability issue in a subsequent suit if they were not actually joined in the federal declaratory judgment action). Therefore, we hold that Glover is collaterally estopped from pursuing her claims against Luster and Epps in this state court action, and the circuit court did not err in granting summary judgment to Luster and Epps.

### II. Whether the lower court committed error by granting Appellee's Motion for Summary Judgment when a genuine issue of fact exists as to whether National Youth Sports Program undertook a duty to Appellant on its own or by law, giving Appellant a cause of action.

¶12. The NYSP argues that it should not be liable to Glover since it had no ownership, possession, or control over the premises where Glover was raped and, therefore, had no legal duty to her. *See Joseph v. Tennessee Partners, Inc.*, 501 So. 2d 371, 375 (Miss. 1987). The NYSP administers federal funding to 169 institutions throughout the United States to conduct a program for socio-economically disadvantaged children. It reviews existing programs to ensure that adequate facilities and resources are available to conduct the program and that the participating institutions (such as JSU) exercise control over the provided funds in accordance with federal regulations.

¶13. Glover alleges that the NYSP exercises control over the program and the way it is managed; and therefore, it is liable to Glover. She cites *McWilliams v. City of Pascagoula*, 657 So. 2d 1110, 1112 (Miss. 1995), where this Court held that a city had a duty of exercising reasonable care to protect patrons from attacks by other patrons at a city-sponsored dance. However, the city did more than provide funds for a dance. It charged admission, provided chaperones to supervise the participating youths, and had been aware of altercations at the dance prior to the incident which was the subject of the litigation.

¶14. In contrast, the NYSP did not take an active role in the program at JSU. It contracted with JSU to provide resources and staff and to run day-to-day operations. Funding a program, without more, does not create sufficient ownership or control to establish either a duty to supervise or a corresponding liability for failure to supervise. Therefore, the circuit court did not err in granting summary judgment to the NYSP.

### III. Whether the lower court committed error in granting Appellee Jackson State University's Motion for Summary Judgment on immunity grounds.

¶15. Glover alleges that JSU has waived any immunity provided it under the Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1, *et seq.* (Supp. 1999), by purchasing liability insurance. JSU responds that the liability insurance coverage provided through the NYSP was not authorized by JSU's governing authority. The injury in this case occurred on June 18, 1993, prior to the waiver of sovereign immunity for the state and its political subdivisions. The Tort Claims Act took effect in April of 1993, but immunity was not waived for the state (JSU falls within § 11-46-1's definition of "state") until July 1, 1993. Therefore, this case is governed by *Gressett v. Newton Separate Mun. Sch. Dist.*, 697 So. 2d 444 (Miss. 1997). In *Gressett*, this Court held that a school district was immune from suit for a tort that arose after the April 1993 date of the Mississippi Tort Claims Act, but before immunity was waived for the state's political subdivisions on October 1, 1993. *Id.* at 446.

¶16. However, our holding in *Gressett* is tempered by the recent decision in *Lincoln County Sch. Dist. v. Doe*, 1999 WL 251327 (Miss. 1999), where we held that, pursuant to § 11-46-16(2) of the Tort

Claims Act, a governmental entity which has in effect a policy of liability insurance which covers the tort sued upon will waive immunity to the extent of the liability coverage.

¶17. In this case, JSU argues that it should not be liable, even under a policy of liability insurance, as the liability insurance was not provided for or approved by the Board of Trustees of State Institutions of Higher Learning. Instead, the liability insurance in this case was provided by the National Youth Sports Program as part of the agreement between it and JSU. Miss. Code Ann. § 11-46-17 specifically provides that "[p]rior to July 1, 1993, the Board of Trustees of State Institutions of Higher Learning *may* provide such liability coverage," thereby waiving insurance to the extent of that coverage. Miss. Code Ann. § 11-46-17 (Supp. 1999) (emphasis added). The statute uses the word "may," which is permissive and does not exclude the possibility that there will be other policies of liability coverage provided by other persons or entities.

¶18. Since § 11-46-16(2) states that immunity is waived to the extent that a governmental entity has "*in effect* liability insurance," JSU's immunity is waived to the extent of any policy it had in effect at the time that Glover's alleged injuries arose. Miss. Code Ann. § 11-46-16(2) (Supp. 1999) (emphasis added). Since the issue of whether the insurance policy in dispute would cover Glover's injuries was not addressed by the trial court and, therefore, is not properly before this Court, we vacate the summary judgment as to JSU and remand this case to the trial court for such a determination.

> **IV. The lower court erred in denying defendant's motion to dismiss plaintiff's claims with prejudice, or, in the alternative, to award attorneys' fees and costs preventing plaintiff from reaping the benefit of the mistrial and subsequent motion to recuse made by plaintiff on account of the conduct of plaintiff's counsel.**

¶19. The standard of review of a lower court's decision of whether or not to grant a dismissal and attorney fees is abuse of discretion. *See **State v. Blenden**, 1999 WL 418803 (Miss. 1999)*; ***Wallace v. Jones,*** 572 So. 2d 371 (Miss. 1990). In ***Blenden***, the Court explained:

> In ***Ladner v. Ladner***, 436 So. 2d 1366, 1370 (Miss. 1983), we held that even where there is no specific statutory authority for imposing sanctions, courts have an inherent power to protect the integrity of their processes, and may impose sanctions in order to do so. More recently, in ***Vicksburg Refining, Inc. v. Energy Resources Ltd.***, 512 So. 2d 901 (Miss. 1987), we held that "[w]hen counsel's carelessness causes his opponent to expend time and money needlessly, it is not an abuse of discretion for the court to require offending counsel to pay for his mistake, especially where . . . out-of-town travel was involved." ***Id.*** at 902. In the case at bar, we conclude that where a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney's fees and expenses should be awarded to the wronged party. . . . [N]ot all misconduct would warrant such an award, ***Aeroglide Corporation v. Whitehead***, 433 So. 2d 952 (Miss. 1983) . . . .

199 WL 418803 (¶ 33). In ***Aeroglide***, the Court upheld a trial court's decision to award costs of trial excluding attorney fees for contemptuous conduct by trial counsel.

¶20. The consolidated cases first filed by Glover were tried by Judge Graves in 1996. On approximately the sixth day of trial, Chokwe Lumumba, Glover's counsel, called Jerry Johnson as an expert witness in the administration and supervision of the NYSP. Lumumba attempted to elicit an opinion from Johnson regarding how well the sound traveled in the building where Glover was raped. Judge Graves sustained the

defendants' objection. Lumumba requested a bench conference, which Judge Graves denied because he did not wish to hear argument about his ruling. Lumumba suggested that he wished to approach the bench for a different reason, and Judge Graves allowed him to approach. After a brief off-record discussion, Judge Graves directed Lumumba to step back from the bench, stating that Lumumba was addressing the same previously ruled upon issue, and that Judge Graves did not wish to hear any further argument on that matter. Lumumba then pointed out to Judge Graves that he had allowed testimony from a defense witness on the same subject matter. Judge Graves dismissed the jury and explained on the record that he felt that Johnson's opinion on the matter was irrelevant and outside the scope of his expertise. He addressed Lumumba's allegations that he was being unfair in allowing another witness to testify as to the same matter by stating that the other witness's testimony was based on his personal observations and was not given as an expert opinion. Judge Graves gave Lumumba an opportunity to respond to his ruling. Lumumba stated:

> You know, Judge, you seem to have a selective memory. First of all, not making an objection in this case has never been an impediment to you stopping somebody from doing something. As I recall, as you look at the clock and don't pay attention to what I'm saying, that the situation at the very beginning of this trial was one where you interrupted voir dire, which no one objected to.

> Secondly, you sat here and allowed them to testify, and in some instances over our objections, to what they could hear from inside of one place or the other place. So if they can testify to what they could hear, how is it that we can't testify as to what we could hear? That doesn't make sense. It is a question of weight of the testimony. It's not a question of admissibility of the testimony. That's a very simple and basic concept that most jurists would understand. That you do not have to exclude the testimony because of the alleged lack of weight of the testimony. The argument that somebody else could have heard can easily be made by the proponent of that position in an argument. That's the point to be made.

> But since, as the record may reflect, you don't seem to be listening anyway, I'm going to stop talking. It doesn't make sense to talk to nothing or to nobody. And so that's the point to be made as it relates to this particular situation.

> As far as him testifying to what he saw at the building, that is not the kind of inquiry which is relevant once someone has been allowed to testify as to what they could hear. And I would ask the Court or thank the Court to stop making implied intimidations to this side, whatever you do over there, because I am not impressed.

Judge Graves then called the jury back in. After Lumumba asked the first question, defendants again objected, and Judge Graves excused the jury again. He then made the following statement on the record:

> The record will reflect, and it's all in the record and I'm not going to repeat it, the statements which were made to the Court during the two minutes which were allotted to Mr. Lumumba to address the Court in response to the Court's concerns and observations. Mr. Lumumba really didn't try to disguise it. He said I was dumb. He said he was talking to nothing and nobody because I was ignoring him. And then he suggested that I have been interrupting him and being unfair and biased throughout the course of the trial.

> He said enough that in most courts in this country, most judges would have found him in contempt for saying it right when he said it. But I didn't and I'm not going to. I am going to at this point, based on

those statements, I think there's enough there that if I stood on the highest mountain and declared my ability to be fair and impartial, his statements alone to me would be sufficient that an impartial outside observer may question that ability.

And so it is for those reasons that I am compelled to declare a mistrial in this case and I'm going to recuse myself from hearing any other matters in connection with this case . . . .

The defendants objected, stating that they had gone through considerable effort and expense in the lengthy trial thus far, and that they felt Lumumba's words were inappropriate, but that he should not benefit from them by getting a mistrial. The defendants also stated that Judge Graves was still capable of being fair and impartial to both sides. After giving Lumumba an opportunity to consult with co-counsel and his clients, Judge Graves then gave Lumumba an opportunity to respond to defendants' argument. Lumumba stated:

I've had an opportunity to discuss this with my clients, Judge, and they would actually want to join in the motion for the mistrial for the jury and for the Court. Let me say as far as the jury is concerned, one of my clients observed, and I actually observed myself, is that on the way out of courtroom, and I think is was actually before any kind of colloquy I had with the Court, they were laughing. In my opinion, and let me say this, my comments to the Court were based upon the fact that the Court was making it obvious to me that it wasn't listening to me and if nobody is listening, then nobody can hear and that was my point.

The second thing is that whatever the Court's intention, and what's happened is the way the Court has made many of its rulings has kind of made us a mockery of the jury and they have responded by laughing and joking. As so the point that-I think my clients feel, and I would also join in that, is that a mistrial should be granted because at this point neither the jury nor the Court can be fair. That's our opinion.

The defendants responded that they believed Lumumba had deliberately made those insults and comments to provoke Judge Graves into a mistrial because he was unhappy with the jury panel and the way the trial was going. Lumumba opposed any motion for sanctions and attorney's fees, saying that he bore the greater cost in going to trial again. Judge Graves responded that he would let the next judge assigned to the case deal with any sanctions or motions for attorney fees, as he had already recused himself from hearing any further proceedings. He then added:

The only other thing that I would add for purposes of the records is that in the five years that I've presided in trials and heard motions and everything else, no other lawyer has ever talked to me the way you talked to me today, Mr. Lumumba. And I just want the record to reflect that but for the fact that I've known you for all the years that I have known you and the respect that I have for you and have had over the years that I have known you from way, way back when I was in college and knew you from that period of time, and it's because of the respect that I have for you and the length of time that I've known you, the respect that I have for you as a lawyer; trust me, that's the only reason Mrs. Harper doesn't already have you over there locked up. And there's probably only a handful of people on the planet who would have gotten away with talking to me the way you talked to me this afternoon and all you get for doing it is that you get to have a mistrial and you get to go home.

Once Judge Hilburn was assigned the case, the defendants made a new motion to dismiss Glover's lawsuit with prejudice or, in the alternative, for attorney fees, which was denied.

¶21. The defendants first claim that Glover should not be allowed to benefit from the mistrial provoked by her counsel. The defendants cite to *Planters Bank v. Garrott*, 239 Miss. 248, 122 So. 2d 256, 261 (1960), where this Court held that one will be estopped from taking

> advantage of errors for the commission of which he is responsible, . . . for which he has invited or induced the trial court to commit, as where the ruling, or error, was made at his request or suggestion, or on his urging, or where he procured the making of the ruling or the taking of the action.

239 Miss. at 267, 122 So. 2d at 262 (quoting 5 C.J.S. *Appeal and Error* § 1501, at 857). The defendants also contend that Lumumba's conduct had the result of unnecessarily expanding the proceedings, resulting in prejudice to the defendants. They further allege that Lumumba's conduct was intentional and not simply zealous representation of his client and that his behavior fell below the acceptable levels prescribed by the Mississippi Rules of Professional Conduct.

¶22. Lumumba responds that, in making the statements that he did, he was merely commenting on Judge Graves' ruling on the objection, as he was invited. He also believes that he was obligated to raise his objections in zealously representing his client, and that he did not do so with the purpose of causing a mistrial.

¶23. Glover correctly notes that dismissing her actions with prejudice would be far too severe a sanction even with the allegations of contemptuous conduct on the part of her attorney. In *Wallace v. Jones*, 572 So. 2d 371, 374 (Miss. 1990), this Court explained that involuntary dismissals should be granted in only three cases: "dismissal at the close of the plaintiff's evidence for failure to show a right to relief; dismissal for want of prosecution, and dismissal for failure to comply with the rules of the court or any order of the court." The Court went on to say:

> dismissal for failure to comply with an order of the district court is appropriate only where there is a clear record of delay or contumacious conduct and lesser sanctions would not serve the best interests of justice. This is so because dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases.

*Id.* at 375-76 (citations omitted). In this case, lesser sanctions for counsel's misconduct are available and may be appropriate. It should also be noted that dismissal with prejudice in this case is moot, as Glover has already filed a third complaint and proceeded with that suit after her consolidated complaints were dismissed without prejudice.

¶24. As to the failure of the lower court to award attorney fees for Lumumba's alleged intentional provocation of the Court to declare a mistrial, there is an insufficient record for this Court to review that decision for an abuse of discretion. Judge Hilburn did not make any findings of fact or conclusions of law, but simply entered a short order to the effect that the defendant's motion "is not well-taken and should be denied." It appears that Lumumba's conduct at trial was far from professional or courteous to the Court and might deserve sanctions. Indeed, this Court has recently held that "where a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney's fees and expenses should be awarded to the wronged party" in the recent case of *State v. Blenden,* 1999 WL 418803 (¶ 33) (Miss. 1999). However, it is impossible to tell from the record why Judge Hilburn did not think an award of attorney fees was appropriate. Without some indication as to the trial court's reasoning, this Court is unable

to review whether the decision to deny attorney fees was an abuse of discretion. Therefore, we will vacate the order denying attorney's fees and remand this case so the issue of attorney fees may be considered and addressed in detail by the lower court.

**CONCLUSION**

¶25. Glover is precluded by collateral estoppel from relitigating the issue of liability by Luster and Epps. The NYSP had no duty toward Glover for which it may be found liable for her injuries. Therefore, the judgment of the Hinds County Circuit Court granting summary judgment to Epps, Luster, and the NYSP is affirmed. As to JSU, the judgment is vacated, and this case is remanded for a determination of the liability of JSU, such liability being contingent upon whether JSU had in effect a policy of liability insurance which would cover a tort suit for Glover's injuries. Finally, the judgment of the Hinds County Circuit Court denying the defendants' motion to dismiss and for attorney fees is vacated in part, and the issue of attorney fees and costs is remanded to the trial court for further consideration of the issue and the entry of appropriate findings of facts and conclusions of law.

¶26. **AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., SMITH, J., AND MILLS, J., CONCUR. COBB, J., CONCURS IN PART. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY COBB, J. BANKS, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶27. The majority fails to recognize that collateral estoppel should not apply since the issue presented in federal court was not an issue involved in this case. Luster and Epps' insurance company sued to determine any liability it had on the vehicle liability policy, not whether Luster and Epps were liable for allowing the girl to be dropped off at the wrong building. The vehicle was not involved in the actual rape nor would the vehicle's liability policy be involved. The insurance company sued Luster, Epps and Glover to determine its liability under the policy covering the vehicle. In other words, this was a contract case and not a tort case. In holding that Glover is collaterally estopped from pursuing her claims against Luster and Epps, the majority is opening the door for insurance companies to forum shop by simply going to federal court and forcing the plaintiff to prove his case there before bringing it in state court.

¶28. When this case was heard in its declaratory judgment action, the sole issue litigated was whether Luster and Epps were liable for Glover's injuries under their insurance policy. The insurance policy only encompassed Glover's injuries which arose out of the "ownership, maintenance or use of" the insured bus on which she was a passenger. Judge Barbour found that no liability could be found under that policy. This was a contract action. Luster, Epps, and Glover were not even on opposite sides since the company sued for declaratory action to determine under a contract action its exposure. While this finding would collaterally estop Glover from further litigating the issue as it relates to that policy, it does not bar Glover's claim against Luster and Epps as their liability may have no relation to any liability protected by the policy. This case involves a different cause of action than the federal court case since "the theories of discovery, the operative

facts and the measure of recovery differ." *See Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1031 (5th Cir. 1991).

¶29. Glover may still bring on evidence to show that Luster knew or should have known that other participants in the program would cause harm and/or rape Glover if left alone. She may also show that Luster is liable for dropping her off at the wrong location with no supervision. These actions would not arise out of the "ownership, maintenance or use of" the bus, and subsequently, Glover cannot be collaterally estopped from pursuing these claims. The grant of summary judgment in favor of Luster and Epps should be reversed and remanded, allowing Luster her day in court.

¶30. As to Jackson State, this case involves a governmental entity and raises the issue of the applicability of the Mississippi Tort Claims Act. The rape occurred on June 18, 1993, one month before the Tort Claims Act took effect. As a result, our holding in *Churchill v. Pearl River Basin Dev. Dist.*, 619 So. 2d 900 (Miss.1993), would control and the insurance coverage would be applicable. Under *Churchill*, when a political subdivision purchases liability insurance, it waives its immunity up to the amount of the insurance. *Id.* at 906. Therefore, once the entity purchases insurance it is treated like any other defendant.

¶31. Lastly, this Court errs in vacating the order, denying costs and attorneys' fees and sending it back for further discussion by the trial court. In finding that there is an insufficient record to review whether the lower court's decision to deny attorney fees under an abuse of discretion, we are allowing the defendants a second bite at the apple. The defendants had the burden and duty to present evidence and to get the court to state on the record reasons for its holding. Judge Hilburn's only statement in regards to this issue was found on an order which stated the defendant's motion was "not well-taken and should be denied." This issue was raised by defendants on cross appeal and not by Glover. Defendants are attempting to get this action dismissed with prejudice and sanction the plaintiff's lawyer and the client by assessing all attorney fees and costs.

¶32. In reviewing the record of a case in which he did not even sit, Judge Hilburn held that attorneys fees and sanctions were not warranted. Judge Hilburn looked at the same record in making his decision that we look at today. Being shown no proof that he abused his discretion, we should affirm. What is a judge to do after our "enlightened" instructions anyway? Is he to dismiss? Or is this issue going to rear its ugly head before this Court in another thirty or sixty days? To put it mildly, this issue was left hanging. I would affirm the trial court's denial of costs and attorneys' fees.

## COBB, J., JOINS THIS OPINION IN PART.

1. Timely filing of the third complaint will not be discussed because the issue is procedurally barred. The defendants failed to raise in their briefs any possible statute of limitation issue, and this Court has long held that issues not raised on appeal are procedurally barred from consideration. In addition, this Court has consistently held that violation of the statute of limitation is an affirmative defense, which may be waived if not asserted. *Conerly v. State*, 607 So. 2d 1153, 1156 (Miss. 1992) ("The statute of limitations in civil cases is an affirmative defense which is deemed waived if not timely asserted."); *Wholey v. Cal-Maine Foods, Inc.*, 530 So. 2d 136, 138 (Miss. 1988).