¶ 18. The majority again declines to hold that, by purchasing insurance, a public entity waives its defense of sovereign immunity to the extent of the policy limits. With its opinion in the present case, the majority purports to encourage the state subdivisions to become insured while removing the impetus to do so. Simultaneously, the majority frustrates the purpose of purchasing liability insurance, which is to indemnify the insured against liability. There is no reason to indemnify an immune tortfeasor.
¶ 19. Mary Maxwell was injured while at work, allegedly as a result of Jackson County's negligence. Today the majority rules that she cannot hold her tortfeasor liable for its negligence, a right enjoyed by those injured by private-sector actors and guaranteed by Article 3, Section 24 of the Mississippi Constitution. In doing so, the majority denies her the benefit of a liability insurance policy purchased by her tortfeasor, Jackson County. Accordingly, I dissent.
¶ 20. The language of the Tort Claims Act does not preclude political subdivisions from suing each other. If the negligence of one political entity causes an on-the-job injury to an employee of another political entity, the employer entity could then sue the tortfeasor entity to recover workers' compensation benefits paid to the injured employee. If the political subdivisions can sue one another, a unique and exclusive class would then be created by not allowing the injured employee to also bring suit.
¶ 21. In other words, while a victimized government employee cannot seek restitution from another governmental entity that negligently caused her injury, the victim's employer would be able to bring suit to reclaim the workers' compensation benefits. Under this paradigm, everyone is made whole except the innocent victim, who is punished because she was injured by another government entity and its employees.
¶ 22. Providing a remedy at law for the government while denying that right to its employees, when both are aggrieved by the same event, does not comport with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, nor with Article 3, Section 24 of the Mississippi Constitution, which provides an open court and a remedy by due course of *Page 905 
law for every injury. U.S. Const. Amend. XIV, § 1; Miss. Const. Art. 3, § 24.
¶ 23. Furthermore, from a reading of the statutory scheme as a whole, it is clear that the Tort Claims Act was intended to partially waive sovereign immunity in order to provide foradditional civil remedies, not to limit the civil remedies that were already in existence at the time the Act was passed. When read by itself, § 11-46-9 (1)(l) appears to bar all lawsuits brought by any government employees who are receiving workers' compensation benefits against the governmental entity providing the benefits. However, this code section must be interpreted in light of the statutory scheme as a whole, not as an independent dictate. Lee v. Alexander, 607 So.2d 30, 36 (Miss. 1992) (citingPearl River Valley Water Supply Dist. v. Hinds County,445 So.2d 1330 (Miss. 1984)). This section simply complies with the Workers' Compensation Act. It does not preclude an employee from suing another public entity. She is only precluded from suing her own employer that has provided workers' compensation coverage.
¶ 24. When the Tort Claims Act was passed in 1993, the Legislature also passed the Tort Claims Fund to pay for the increased number of lawsuits anticipated by the Act. Miss. Code Ann. § 11-46-17. Section three of this statute requires all political subdivisions to become insured against all risks of claims and lawsuits for which the entity may be liable. Miss. Code Ann. § 11-46-17 (3). Section 4 of this provision states the following:
 Any governmental entity of the state may purchase liability insurance to cover claims in excess of the amounts provided for in Section 11-46-15 and may be sued by anyone in excess of the amounts provided for in Section 11-46-15 to the extent of such excess insurance carried; provided, however, that the immunity from suit above the amounts provided for in Section 11-46-15 shall be waived only to the extent of such excess liability carried.
Miss. Code Ann. § 11-46-17 (4). (emphasis added).
¶ 25. By 1993, when the Mississippi Tort Claims Act was passed, this Court had consistently held that a governmental entity waives sovereign immunity up to the limits of the policy when it purchases liability insurance. The Act created additional waivers of immunity, and created a fund to pay for the additional liability anticipated by the Act.
¶ 26. Furthermore, the Act required all political entities to purchase insurance sufficient to cover "all risks of claims or suits for which political subdivisions may be liable." Miss. Code Ann. § 11-46-17 (3). In passing the Act, the legislature created civil remedies, created a fund to pay for judgments against the state, required insurance to pay claims, and expressly authorized the entities to purchase insurance above the liability limits established by the Act.
¶ 27. Today this Court holds that, by enacting the aforementioned measures, the legislature actually intended to limit the civil remedies available to those injured by governmental tortfeasors. This holding defies logic, sound reasoning, and the clear intention of the legislature when it passed the Mississippi Tort Claims Act. When a political entity is insured against liability, sovereign immunity should be waived to the extent of the insurance coverage.
¶ 28. Citing L.W. v. McComb Separate Municipal Sch. Dist.,754 So.2d 1136, 1144 (Miss. 1999), this Court again holds that even insured governmental tortfeasors are immune from suits by their victims. The majority justifies this inequity with the following statement: "Otherwise, sovereigns would be unlikely to continue to purchase insurance if it had the effect of waiving all of their defenses under the MTCA — an undesirable and unintended result in this Court's view." Id.
¶ 29. Ironically, the majority's opinion in this case may bring about the very evil that it intends to avoid by removing any *Page 906 
incentive for procuring insurance. With the risk of liability removed, a political subdivision may no longer be required to obtain insurance under Miss. Code Ann. § 11-46-17 (3). That statute requires all political subdivisions to obtain such insurance as is "necessary to cover all risks of claims and suitsfor which political subdivisions may be liable under this chapter." (emphasis added).
¶ 30. Therefore, sovereigns may be less likely to continue to purchase insurance if they are immunized from liability by this Court. Under the holding of the majority, governmental entities would be bound to remain insured by neither prudence, nor §11-46-17 (3). This would indeed be "an undesirable and unintended result" in my view.
¶ 31. It is beyond reason to assert that the legislature has expressly required governmental entities to purchase insurance, while at the same time barring the use of those policies to compensate those who are injured because of the entity's negligence. Who is the majority protecting here? Surely not private insurance companies. The state government and the public must not be jeopardized by the tortious actions of state employees.
¶ 32. However, this Court has acknowledged that the need to protect the public's funds is non-existent where the governmental entity is insured against liability. In such a situation, the public is no longer at risk because the risk of loss has been transferred from the state to an insurance company. This transference of risk is the value that the state should receive in return for the premiums that it pays for the insurance.
¶ 33. Under the majority's view, the risk of being sued by its victims is not transferred from the state to the insurance companies. Essentially, the insurer benefits from the insured's sovereign immunity. In return, the state gets diminished coverage because it pays for liability insurance that can never be used to compensate the injured. This amounts to a delegation of immunity, which is rightfully vested only in the state. This Court acknowledged as much in 1993 when it held that "where a political subdivision has insured itself in tort liability, no justification exists for insulating the insurance carrier from a claim under the Doctrine of Sovereign Immunity." Churchill v. Pearl River BasinDev. Dist., 619 So.2d 900, 905 (Miss. 1993).
¶ 34. The majority, however, holds that insurance companies may be vicariously immunized from the state by selling insurance policies to political entities that have been declared immune by this Court. When a public entity is insured against the type of event giving rise to injury, the only party benefitting from immunity is the insurance company, not the state, not the public, and certainly not the injured party.
¶ 35. For these reasons, Mary Maxwell should be entitled to her day in court, the judgment of the circuit court should be reversed, and this case remanded for a trial on the merits. Accordingly, I dissent.
DIAZ, J., JOINS THIS OPINION.