# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00928-COA

CURTIS RAY MCCARTY JR.

APPELLANT/
CROSS-APPELLEE

v.

ARTHUR WOOD III AND PAULA WOOD

APPELLEES/
CROSS-APPELLANTS

DATE OF JUDGMENT: 03/01/2016
TRIAL JUDGE: HON. LESTER F. WILLIAMSON JR.
COURT FROM WHICH APPEALED: WAYNE COUNTY SPECIAL COURT OF EMINENT DOMAIN
ATTORNEYS FOR APPELLANT: J. RICHARD BARRY
JAMES CORNELIUS GRIFFIN
ATTORNEYS FOR APPELLEES: TERRY L. CAVES
RISHER GRANTHAM CAVES
NATURE OF THE CASE: CIVIL - EMINENT DOMAIN
DISPOSITION: ON DIRECT APPEAL: REVERSED AND REMANDED. ON CROSS-APPEAL: AFFIRMED - 01/23/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.    Curtis Ray McCarty Jr. has thirty to thirty-five acres of land in rural Wayne County, but he has no way to get to it.  He used to drive there on a dirt and gravel private road that crossed the lands of neighboring property owners.  But in 2004, Arthur Wood III, who owns the property surrounding McCarty's land, put an end to McCarty's use of the road.  McCarty sued Wood, and they have been litigating ever since.  McCarty first sued Wood in chancery court.  Around the time that lawsuit was dismissed with prejudice, McCarty sued Wood in

circuit court, but that action was also dismissed with prejudice. Finally, McCarty filed a petition in the Wayne County Special Court of Eminent Domain to establish a "private road" pursuant to Mississippi Code Annotated section 65-7-201 (Rev. 2012). The issue in this appeal is whether either res judicata or collateral estoppel bars McCarty's petition. For the reasons discussed below, we conclude that neither doctrine bars McCarty's petition.

## FACTS AND PROCEDURAL HISTORY

¶2. McCarty purchased thirty to thirty-five acres of land in rural Wayne County in 1993. McCarty had a trailer and farming equipment on the property, which he used for hunting, cattle, timber, and hay. McCarty's property was landlocked when he bought it, but he accessed it by a dirt and gravel private road that runs from Chicora River Road across land owned by various timber companies. The timber companies did not object to McCarty using the road, and he even put a lock on a gate on the road and graded the road occasionally.

¶3. In July 2003, Wood[1] bought the land surrounding McCarty's land. Wood wanted to control access to the road by putting his own lock on a gate on the road, but he gave McCarty a key to the lock and permission to continue using the road. Wood later had problems with trespassers cutting the locks. Each time Wood had to replace the lock, he gave McCarty a key to the new lock, but according to McCarty, Wood sometimes failed to tell him that the lock had been changed. This inconvenienced and frustrated McCarty and led to an argument

---

[1] Wood owns the land with his wife, Paula, and accordingly McCarty named her as a defendant in each of the actions that he has filed concerning the road. However, McCarty testified that he has never met Paula, so for simplicity we omit further reference to her.

2

between the two men in November 2004. According to McCarty, Wood tried to buy his property, and when he refused to sell, Wood refused to give him a key to the new lock on the gate, which prevented him from accessing his property.

¶4. In July 2005, McCarty filed a complaint against Wood in the Wayne County Chancery Court. The complaint asserted claims for an implied easement or easement by necessity, a prescriptive easement, and intentional infliction of emotional distress. McCarty sought an easement over the private road, compensatory damages of $50,000, and punitive damages of $100,000. As to the easement claims, McCarty also named Leaf River Forest Products as a defendant as the alleged owner of land that the private road crossed between Wood's property and Chicora River Road. However, Plum Creek South Timberlands LLC (Plum Creek), the true owner of the relevant land, was later substituted for Leaf River. In October 2005, the chancery court entered an agreed order granting McCarty a temporary easement to use the road for one year or until a trial on the merits, whichever occurred first.

¶5. The case was set for trial in April 2008, but McCarty failed to appear. Wood then filed a "motion for summary judgment" in which he argued both that "the complaint should be dismissed for failure to prosecute" and that McCarty had failed to prove the various elements of a prescriptive easement or an easement by necessity. McCarty failed to respond to Wood's motion, and in September 2009 the chancery court granted Wood's motion and dismissed the case "with prejudice." However, the chancery court's order did not specify the grounds on which the case was dismissed.

¶6.     In August 2009, while the chancery court case was still pending, McCarty filed a two-page complaint against Wood in the Wayne County Circuit Court. The complaint, which sought $40,000 in compensatory damages, was basically just a shorter version of the claim for intentional infliction of emotional distress that McCarty had asserted in chancery court. Wood answered and filed a motion for summary judgment. He argued that the circuit court complaint was barred by the doctrine of res judicata. In May 2010, the circuit court granted Wood's motion for summary judgment and also awarded him $5,996.87 in attorney's fees, which were assessed against McCarty's attorney pursuant to the Mississippi Litigation Accountability Act, Miss. Code Ann. §§ 11-55-1 to -15 (Rev. 2012).

¶7.     In October 2014, McCarty filed a "Complaint to Condemn Real Property" in the Wayne County Special Court of Eminent Domain. He named Wood and Plum Creek as defendants and alleged that he was entitled to a "private road" across their lands pursuant to Mississippi Code Annotated section 65-7-201. Wood answered and filed a motion for summary judgment, arguing that the complaint was barred by the doctrines of res judicata and collateral estoppel based on the prior judgments in the circuit court and chancery court actions. Plum Creek filed a motion for summary judgment adopting Wood's arguments, and McCarty responded to the motions.

¶8.     The court subsequently ordered the parties to participate in mediation. During the mediation, Plum Creek agreed to grant McCarty an option to purchase a right of way across

the section of the private road on its land.[2]  However, McCarty and Wood did not reach an agreement.  McCarty alleged that Wood refused to even discuss a right of way and only offered to buy McCarty's property "for $200.00 an acre, a far undervalued price."  Wood moved to strike McCarty's allegation as a violation of the parties' mediation agreement and an improper disclosure of confidential settlement negotiations.

¶9.     Following the unsuccessful mediation, the court entered a memorandum opinion and order finding that McCarty's complaint for a private road was barred by the doctrine of res judicata.  Accordingly, the court granted Wood's motion for summary judgment.

¶10.    McCarty filed a timely motion to alter or amend the judgment, and Wood filed a motion for attorney's fees pursuant to Mississippi Rule of Civil Procedure 11 and the Litigation Accountability Act.  The court subsequently denied both motions.  The court acknowledged that the case raised "a novel issue" of res judicata and that the result was "harsh."  However, the court again concluded that res judicata barred McCarty's petition.  The court denied Wood's request for attorney's fees because it did "not find the action to be frivolous."  McCarty filed a notice of appeal, and Wood filed a cross-appeal from the denial of his motion for attorney's fees.

**ANALYSIS**

¶11.    The issues in this appeal are whether McCarty's petition for a private road is barred by either (1) res judicata (as the special court of eminent domain ruled) or (2) collateral

_____

[2] Based on this agreement, the court entered an agreed order dismissing Plum Creek.

estoppel (which Wood raises as an alternative ground for affirmance).[3] For the reasons that follow, we hold that neither doctrine bars McCarty's petition. Therefore, we reverse and remand in the direct appeal. Because McCarty's petition was not frivolous, we affirm the denial of Wood's motion for attorney's fees.

¶12. Before we address these issues, we begin with a brief overview of the statute under which McCarty filed his present petition for a private road. Section 110 of the Mississippi Constitution authorizes the Legislature to "provide, by general law, for condemning rights of way for private roads, where necessary for ingress and egress by the party applying, on due compensation being first made to the owner of the property." Miss. Const. art. 4, § 110. The Legislature has implemented Section 110 by providing that if "any person shall desire to have a private road laid out through the land of another, when necessary for ingress and egress" to his own property, "he shall apply by petition, stating the facts and reasons, to the special court of eminent domain . . . of the county where the land or part of it is located."[4] Miss. Code Ann. § 65-7-201. "The court sitting without a jury shall determine the reasonableness of the application," and if the court finds that the application is reasonable, a jury must

---

[3] In an appeal from an order granting summary judgment, the appellee is "entitled to raise any alternative ground" that was raised in the court below. *Brocato v. Miss. Publishers Corp.*, 503 So. 2d 241, 244 (Miss. 1987). There are no disputed facts that are material to the issues of res judicata and collateral estoppel. Therefore, these are issues of law that we review de novo. *Baker & McKenzie LLP v. Evans*, 123 So. 3d 387, 401 (¶49) (Miss. 2013); *Global Oceanic Enters. Inc. v. Hynum*, 857 So. 2d 659, 661 (¶8) (Miss. 2003).

[4] The special court of eminent domain is created "in the county court" of a county that has one and "in the circuit court" of a county (such as Wayne County) that does not. Miss. Code Ann. § 11-27-3 (Rev. 2014).

determine the amount of compensation due to the owner of the property through which the private road is to be established. *Id.* Until 2003, section 65-7-201 and predecessor statutes required that a petition for a private road be filed with the county board of supervisors. *See High v. Kuhn*, 191 So. 3d 113, 117-18 (¶17) (Miss. 2016). The Legislature amended the statute in 2003 to provide that such a petition shall be filed in the special court of eminent domain. *See id.* at 118 (¶18).

## I.     Res judicata does not bar McCarty's petition for a private road.

¶13.    "The doctrine of res judicata," also known as "claim preclusion," "bars parties from litigating claims within the scope of the judgment in a prior action." *Hill v. Carroll Cty.*, 17 So. 3d 1081, 1084-85 (¶¶8, 14) (Miss. 2009) (quotation marks omitted). "In Mississippi, the doctrine of res judicata requires four identities to be present before it applies: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *Id.* at 1085 (¶10). The absence of any one of these identities "is fatal to the defense of res judicata." *Id.* If all four identities are established, "any claims that could have been brought in the prior action are barred." *Id.*

¶14.    We hold that res judicata does not bar McCarty's statutory petition for a private road for two independent reasons. First, his present petition involves different "underlying facts and circumstances" than his prior lawsuits, so there is no "identity of the cause of action." *Id.* at (¶13). Second, a statutory petition for a private road could not have been brought in

7

either of McCarty's prior lawsuits or combined with the common-law claims asserted in those lawsuits. *Id.* at (¶10).

### A. McCarty's petition for a private road is not part of the same "cause of action" as the prior actions.

¶15.    Res judicata applies only when the "'cause of action' in both suits" is "the same." *Id.* at 1085 (¶13). "[Our Supreme] Court has defined 'cause of action' as the underlying facts and circumstances upon which a claim has been brought." *Id.* The term "cause of action" is broader than the specific legal theory or theories asserted in the prior suit; it includes all claims arising out of the "body of fact" underlying the prior suit. *Id.* at 1085-86 (¶14).

¶16.    McCarty's petition for a private road is not based on the same underlying facts and circumstances as his prior lawsuits against Wood. Although there is a superficial similarity among the cases in that all relate to McCarty's inability access his land, there are material differences in the operative facts relevant to the common-law claims in the prior actions and those relevant to McCarty's statutory petition for a private road.

¶17.    We begin with the three common-law claims asserted in McCarty's prior lawsuits. First, his claim for a prescriptive easement required clear and convincing proof of ten years of actual or hostile, open and notorious, continuous and uninterrupted, exclusive, and peaceful use of the easement. *See, e.g.*, *Keener Props. LLC v. Wilson*, 912 So. 2d 954, 956 (¶4) (Miss. 2005). Second, "[a]n easement by necessity requires proof that (1) the easement is necessary; (2) the dominant and servient estates were once part of a commonly owned parcel; (3) the implicit right-of-way arose at the time of severance from the common owner."

8

*Borne v. Estate of Carraway*, 118 So. 3d 571, 584 (¶34) (Miss. 2013). Third, "[a] claim for intentional infliction of emotional distress requires conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Jones v. Mullen*, 100 So. 3d 490, 498 (¶40) (Miss. Ct. App. 2012) (quotation marks omitted).

¶18. Thus, McCarty's prior common-law claims were all backward-looking. Those claims focused on historical ownership of the land, McCarty's prior use of the road, and his allegations of "outrageous" conduct by Wood.

¶19. In contrast, McCarty's petition for a private road requires only proof that, at present, the road is reasonably "necessary for ingress and egress" to his property and then a jury trial to determine damages and compensation. Miss. Code Ann. § 65-7-201. In some cases under the statute, a landowner may argue that a petitioner has failed to explore alternative routes of access, *see Hooks v. George Cty.*, 748 So. 2d 678, 683 (¶27) (Miss. 1999), but here it is undisputed that Wood's land completely surrounds McCarty's land. Thus, McCarty's petition for a private road can and should be decided based on present property lines and circumstances.

¶20. The issues and facts related to the road's use for at least a decade, prior ownership of the respective properties, and the conduct of McCarty and the Woods were all essential to the common-law claims that McCarty previously litigated in chancery court and circuit court. But such issues are all *irrelevant* to his petition for a private road. Given the material

9

differences between the facts relevant to McCarty's present petition and the facts underlying his prior claims, the cases do not involve the same "cause of action" for purposes of res judicata. *Hill*, 17 So. 3d at 1085 (¶13). Accordingly, the doctrine does not bar McCarty's petition for a private road. *See id.* at (¶10).

**B. McCarty's petition for a private road could not have been brought in the prior actions or combined with the common-law claims litigated in those actions.**

¶21. Res judicata does not bar McCarty's statutory petition for a private road for a second, independent reason: the doctrine only applies to "claims that *could have been brought* in the prior action." *Id.* (emphasis added). It does not bar claims that could not have been asserted in the prior case because of limits on the court's subject matter jurisdiction. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985); *Restatement (Second) of Judgments* § 26(1)(c) (1982); 18 Charles Alan Wright, Arthur R. Miller et al., *Federal Practice and Procedure* § 4412 (3d ed. 2002). Res judicata does not bar McCarty's petition for a private road because he could not have combined such a petition with the common-law claims that he previously litigated in chancery court and circuit court.

¶22. The text of section 65-7-201 provides that a petition for a private road *must* be filed in the special court of eminent domain—not in circuit court or chancery court. It states that any person who desires to establish a private road "*shall* apply by petition . . . to the special court of eminent domain . . . of the county where the land or part of it is located." Miss. Code Ann. § 65-7-201 (emphasis added). "A basic tenet of statutory construction is that

10

'shall' is mandatory . . . ." *Khurana v. Miss. Dep't of Revenue*, 85 So. 3d 851, 854 (¶9) (Miss. 2012) (quoting *Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 115 (¶15) (Miss. 2003)). Thus, "[t]he Legislature's statutory use of the term 'shall' connotes a mandatory requirement." *Tallahatchie Gen'l Hosp. v. Howe*, 49 So. 3d 86, 92 (¶17) (Miss. 2010). "Because the statute includes the mandatory term 'shall,' we do not view its restriction as a suggestion—it is a mandate." *Pickering v. Langston Law Firm P.A.*, 88 So. 3d 1269, 1275 (¶21) (Miss. 2012). Based on the plain language of the section 65-7-201, McCarty *could not* have brought a petition for a private road in the prior actions in chancery court or circuit court. Such a petition "shall" be filed in the special court of eminent domain.[5]

¶23.    Nor could McCarty have combined his prior common-law claims with a statutory petition for a private road in the special court of eminent domain. *See* Wright, Miller et al., *supra*, § 4412 ("It has been urged that the plaintiff should be required to seek out the most comprehensive proceeding available . . . .    Some decisions approach this view . . . ."). Rather, Mississippi Supreme Court precedent indicates that the special court of eminent domain lacks jurisdiction over such claims.

¶24.    The Supreme Court has discussed the "pendent jurisdiction" of the special court of

---

[5] In counties that do not have a county court, the "jurisdiction" of the special court of eminent domain is "fixed in the circuit court." Miss. Code Ann. § 11-27-3; *see ante* at n.4. However, even in those counties, the special court of eminent domain and the circuit court are not one and the same. "The [special] court of eminent domain is a creature of statute which exists for a limited time and a limited purpose." *Checkers Drive-In Restaurants Inc. v. Miss. Transp. Comm'n*, 755 So. 2d 1238, 1240-41 (¶10) (Miss. Ct. App. 2000).

11

eminent domain in two cases.  In *McDonald's Corp. v. Robinson Industries Inc.*, 592 So. 2d 927, 936 (1991), the Supreme Court held that if "the eminent domain court has subject matter jurisdiction of a condemnation proceeding as established in the pleadings, the court may determine any questions of title which may arise from the proceedings."  The title issue in *McDonald's* first arose when the Supreme Court sua sponte raised the question whether the landowners "were being paid for land they did not own."  *Id.* at 928.  In a second appeal in the same litigation, the Court held that the special court of eminent domain had "pendent jurisdiction" to answer that question of title.  *Id.* at 936.

¶25.    However, in a subsequent opinion, the Supreme Court distinguished *McDonald's* and held that the special court of eminent domain lacked "pendent jurisdiction" to decide "due-process and civil-rights claims" asserted in an inverse-condemnation case.  *Delta MK LLC v. Miss. Transp. Comm'n*, 57 So. 3d 1284, 1291 (¶19) (Miss. 2011).  In that case, the owner of a roadside service station (Delta) alleged that highway construction had impeded access to the station and amounted to either a taking without just compensation or a violation of due process.  *Id.* at 1286 (¶¶3-5).  The special court of eminent domain addressed the merits of Delta's inverse-condemnation claim but dismissed its "due-process and civil-rights claims" for "lack of jurisdiction."  *Id.* at 1287 (¶8).  On appeal, the Supreme Court affirmed the dismissal of Delta's "pendent" claims, distinguishing *McDonald's* as follows:

> Delta cites *McDonald's* for the proposition that special courts of eminent domain have the power to determine questions "that were previously considered within the province of the circuit court."  But Delta reads *McDonald's* too broadly.  The *McDonald's* opinion held only that, when a

12

special court of eminent domain has subject matter jurisdiction of a condemnation proceeding, it may exercise pendent jurisdiction over any questions of *title* which may arise in the proceedings. Delta's due-process and civil-rights claims clearly do not implicate questions of title, so *McDonald's* lends no support to Delta's argument that the special court of eminent domain should have exercised pendent jurisdiction.

*Id.* at 1291 (¶19) (emphasis in original).

¶26.    Under these precedents, the special court of eminent domain would not have had "pendent jurisdiction" over McCarty's prior common-law claims. As the Court put it in *McDonald's*, "questions of title" may simply "arise" in the course of litigation of a condemnation claim—a claim that is clearly within the subject matter jurisdiction of the special court of eminent domain. *McDonald's*, 592 So. 2d at 936. Such "questions of title" are logically antecedent to the condemnation claim. Before the court may condemn property or award just compensation for a taking, the court must resolve any unanswered questions of title. *See Gilich v. Miss. State Hwy. Comm'n*, 574 So. 2d 8, 12 (Miss. 1990) ("Without record title to the property, there exists no genuine issue of material fact as to whether the Highway Commission took [the] property or damaged the concomitant riparian and littoral rights."). In a condemnation case, "questions of title" are not additional or independent claims—they are potential *negatives* on the landowner's claim, which *must* be addressed before anything can be condemned or compensation paid.

¶27.    In contrast, McCarty's prior claims for an easement were distinct and alternative legal

13

grounds for establishing access to his property.[6] The Supreme Court's opinion in *Delta MK* clarified that although the special court of eminent domain has "pendent jurisdiction" to resolve "questions of title" that "may arise from [condemnation] proceedings," *McDonald's*, 592 So. 2d at 936, the special court does not have jurisdiction over independent claims that seek relief on alternative legal theories. *Delta MK*, 57 So. 3d at 1291 (¶19). *Delta MK*'s holding applies to McCarty's prior common-law claims for an easement by prescription, implication, or necessity. This holding also clearly applies to McCarty's prior common-law claims for intentional infliction of emotional distress and damages.

¶28. In addition, our Supreme Court recently stated that landowners could pursue "common-law remedies to gain access" to their property despite their unsuccessful litigation of a statutory petition for a private road. *High*, 191 So. 3d at 119 (¶25). In *High*, the Court held that the owners of a landlocked property in the city of Gulfport could not obtain a statutory private road because section 65-7-201 applies only in unincorporated areas. *Id.* at 114 (¶¶1-2). Accordingly, the Court rendered a judgment against the petitioners in the proceeding. *Id.* at (¶2). However, the Court also stated that

> removing the right created by Section 65-7-201 from the table does not necessarily leave the Kuhns without any recourse. *The Kuhns have not pursued any common-law remedies to gain access.... And our holding today does not prejudice the Kuhns' ability to avail themselves of these, and potentially other, remedies.*

---

[6] From McCarty's perspective, they were preferred theories, because if he could prove a common-law easement, "he would not have to pay [the Woods] for" use of the road. *Broadhead v. Terpening*, 611 So. 2d 949, 955 (Miss. 1992) (plurality op.); *accord Vinoski v. Plummer*, 893 So. 2d 239, 242-43 (¶¶10-12) (Miss. Ct. App. 2004).

*Id.* at 119 (¶25) (emphasis added). Taken at face value, this statement provides further indication that a landowner is not required to plead alternative common-law claims in the same proceeding as a statutory claim for a private road under section 65-7-201. Such claims may be pursued in separate proceedings.[7]

¶29. In summary, we hold that McCarty's statutory petition for a private road is not barred by the doctrine of res judicata for two independent reasons: the petition does not involve the same "cause of action" as the prior suits and could not have been included in those prior suits. We now address McCarty's alternative argument that he is entitled to judgment as a matter of law under the related doctrine of collateral estoppel.

## II. Collateral estoppel does not bar McCarty's petition for a private road.

¶30. Res judicata (claim preclusion) "has a sister doctrine" known as "issue preclusion" or "collateral estoppel." *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 640 (Miss. 1991). Collateral estoppel "precludes parties from relitigating *issues* authoritatively decided on their merits in prior litigation to which they were parties or in privity." *Id.* (emphasis added). But it "must never be seen as anything other than an unusual exception to the general rule that

---

[7] McCarty also argues that res judicata should not be applied because it would be contrary to public policy to deny him access to his land. Although we need not reach this issue, we agree that our Constitution and statutory law favor granting a "landlocked" property owner access to his or her property where feasible. *See High*, 191 So. 3d at 119 (¶24); *Warwick v. Pearl River Valley Water Supply Dist.*, 246 So. 2d 525, 528-29 (Miss. 1971). In addition, our Supreme Court has stated that "the doctrine of res judicata is based upon the public policy of putting an end to litigation," but "the doctrine is not inflexible and incapable of yielding to a superior policy." *Bragg v. Carter*, 367 So. 2d 165, 167 (Miss. 1978).

all fact questions should be litigated fully in each case." *Marcum v. Miss. Valley Gas Co.*, 672 So. 2d 730, 733 (Miss. 1996) (quoting *Miss. Emp't Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist.*, 437 So. 2d 388, 397 (Miss. 1983)). The doctrine "precludes relitigating a *specific issue*, which was: (1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action." *Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 845 (¶21) (Miss. 2016) (emphasis added); *accord, e.g.*, *Glover v. Jackson State Univ.*, 755 So. 2d 395, 399 (¶9) (Miss. 2000).

¶31. In this case, Wood argues that the judgment in the prior chancery court action collaterally estops McCarty from relitigating an issue that is essential to his statutory petition for a private road. Specifically, Wood contends that collateral estoppel applies because (1) McCarty's prior common-law claim for an implied easement or easement by necessity required him to prove that the easement was "necessary," (2) the chancery court dismissed that claim with prejudice, and (3) McCarty's present petition for a private road similarly requires proof that a right of way is "necessary." We disagree. Even if we assume for purposes of this appeal that the common-law standard is the same as the statutory standard,[8] Wood cannot show that the chancery court actually decided that issue.

---

[8] We have identified no case that specifically holds that the common-law requirement that "the easement is necessary," *Borne*, 118 So. 3d at 584 (¶34) (enumerating the elements of an implied easement by necessity), is the same as the statutory standard, which has been interpreted as "reasonably necessary and practical" but "not absolutely necessary," *Quinn v. Holly*, 244 Miss. 808, 813, 146 So. 2d 357, 359 (1962). This Court's decision in *Harkness v. Butterworth Hunting Club Inc.*, 58 So. 3d 703, 708-09 (¶¶14-15) (Miss. Ct. App. 2011), suggests that there may be differences.

16

¶32. Unlike claim preclusion, collateral estoppel applies only to *specific issues*. *Gibson*, 186 So. 3d at 845 (¶21); *Glover*, 755 So. 2d at 399 (¶9). In the present case, the record from the prior chancery court action certainly shows that the chancery court dismissed McCarty's complaint with prejudice. But the record does *not* show that the chancery court actually decided that an easement was not "necessary." The chancery court's one-page order does not state the basis for the court's ruling, and the court may well have granted summary judgment for some other reason—for example, because McCarty failed to prove that his and Wood's properties "were once part of a commonly owned parcel" or because McCarty failed to prove that an "implicit right-of-way arose at the time of severance." *Borne*, 118 So. 3d at 584 (¶34) (enumerating the elements of an implied easement by necessity). Alternatively, the chancery court may have dismissed the action for failure to prosecute. In the chancery court, Wood raised all of these issues as grounds for dismissal, and there is no way to determine which of them the court actually decided or which were essential to the court's judgment. *See Gibson*, 186 So. 3d at 845 (¶21).

¶33. The proponent of a defense of res judicata or collateral estoppel bears the burden of proving the defense. *See Astro Transp. Inc. v. Montez*, 381 So. 2d 601, 604 (Miss. 1980); *Willis v. City of Hattiesburg*, No. 2:14-CV-89-KS-MTP, 2016 WL 6088337, at *3 (S.D. Miss. Oct. 18, 2016); *Campbell v. City of Indianola*, 117 F. Supp. 3d 854, 864-65 (N.D. Miss. 2015); *Restatement (Second) of Judgments* § 27 cmt. g (1982). When, as in this case, the judgment and the record in a prior action do not disclose the specific issue or issues

17

decided in the action, the judgment cannot serve to preclude relitigation of issues. *See Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 343-45 (5th Cir. 1982) ("If . . . a judgment may have been based on more than one of several [issues] and there is no indication which issue it was based on . . . , such judgment will not preclude, under the doctrine of collateral estoppel, relitigation of any of the issues."); *Midwest Mech. Contractors Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751-52 (5th Cir. 1986) (holding that when a prior "order . . . did not indicate its basis, and may have rested solely on [other grounds]," collateral estoppel does not apply). Therefore, the prior chancery court judgment and the doctrine of collateral estoppel do not bar relitigation of any issues in the present case.[9]

## CONCLUSION

¶34. Neither res judicata nor collateral estoppel bars McCarty's statutory petition for a private road. Therefore, the order of the circuit court granting Wood's motion for summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion. Because McCarty's petition was not frivolous, we affirm the order of the circuit court denying Wood's motion for attorney's fees.

¶35. **ON DIRECT APPEAL: REVERSED AND REMANDED. ON CROSS-APPEAL: AFFIRMED.**

    **LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, GREENLEE,**

---

[9] Wood briefly argues that the judgment in the circuit court case collaterally estops McCarty from pursing his petition. However, the only issue that the circuit court decided was that the judgment in the chancery court action was res judicata as to McCarty's claim for damages for an alleged claim of intentional infliction of emotional distress. That is not an issue that McCarty seeks to relitigate in his present petition for a private road.

**WESTBROOKS AND TINDELL, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**