# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01095-COA

**REBUILD AMERICA, INC.**                                                          **APPELLANT**

**v.**

**JANE A. DREW**                                                                          **APPELLEE**

DATE OF JUDGMENT:                      05/08/2017
TRIAL JUDGE:                                 HON. JAMES B. PERSONS
COURT FROM WHICH APPEALED:    HANCOCK COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:           LEWIE G. "SKIP" NEGROTTO IV
ATTORNEYS FOR APPELLEE:             ROBERT T. SCHWARTZ
                                                    CHRISTIAN J. STRICKLAND
NATURE OF THE CASE:                    CIVIL - REAL PROPERTY
DISPOSITION:                                 AFFIRMED - 01/22/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     Jane Drew failed to pay the ad valorem taxes assessed on her home in Diamondhead for three consecutive years, and as a result the property was sold at tax sales in three consecutive years. Drew did not redeem the property during any of the statutory redemption periods that followed the tax sales, and Rebuild America Inc. ("Rebuild") now claims ownership of the property through those tax sales. Rebuild's claim to the property led to two lawsuits: a quiet-title action that Rebuild filed against Drew ("*Drew I*") and a suit to quiet title and set aside the tax sales that Drew filed against Rebuild ("*Drew II*"). In *Drew I*, the chancery court held that the first tax sale was void because the chancery clerk failed to

comply with statutory notice requirements. Therefore, the court set aside the first tax sale and declared Drew the rightful owner of the property. Rebuild did not appeal the final judgment entered in *Drew I*. In *Drew II*, the chancery court held that the second and third tax sales were also void due to the clerk's failure to comply with applicable notice statutes. Therefore, the court set aside those tax sales as well and again declared Drew the rightful owner of the property. Rebuild filed a timely notice of appeal in *Drew II*.

¶2. On appeal, Rebuild argues (1) that Drew waived her right to challenge the tax sales pursuant to a 2010 contract between Drew and Rebuild and (2) that Drew was not entitled to notice of the second two tax sales because she was no longer the record owner of the property by that point. We hold that Rebuild's waiver argument is foreclosed by the chancery court's final decision in *Drew I*. We also hold that all three tax sales were void ab initio because in each case the chancery clerk failed to comply with statutory notice requirements. Thus, Drew remained a record owner entitled to statutory notice of each sale. Therefore, we affirm the judgment of the chancery court setting aside the tax sales and declaring Drew the property's rightful owner.

## FACTS AND PROCEDURAL HISTORY

### I. The 2008 Tax Sale and *Drew I*

¶3. Jane Drew owns a house in Diamondhead. Drew failed to pay ad valorem taxes of $522.40 that were assessed on the property for the year 2007. On August 25, 2008, U.S. Bank Custodian - Sass Muni VI ("U.S. Bank") bought the property at a tax sale for the 2007 taxes. Drew did not redeem the property by paying the 2007 taxes within the two-year

redemption period.[1]  On December 1, 2010, the Hancock County Chancery Clerk executed a tax deed to U.S. Bank, which was recorded in the county land records.

¶4.     On December 14, 2010, Drew and Rebuild entered into an agreement of sale ("2010 Agreement").  Drew agreed to pay Rebuild $5,710 on or before February 28, 2011, for the title to her Diamondhead home.  The 2010 Agreement, drafted by Rebuild, represented that Rebuild had already acquired title to the property on December 2, 2010, which was the day after the tax deed was issued to U.S. Bank.  However, as the chancery court later found, that representation was not true.  U.S. Bank did not actually convey the property to Rebuild until May 2011.  The 2010 Agreement also stated: "[Drew] waives and releases all claims, demands, actions and disputes regarding any deficiencies or defects in the foreclosure proceedings and will hold [Rebuild], and prior holders of the tax sale certificates, harmless against any such claims, demands, actions, and disputes."  Drew never paid Rebuild pursuant to the 2010 Agreement.

¶5.     On June 28, 2011, Rebuild filed a complaint in the Hancock County Chancery Court to confirm and quiet title ("*Drew I*").  Drew filed an answer and counterclaim in which she alleged that the tax sale to U.S. Bank was void because the chancery clerk never provided her with notice required by applicable statutes.  On December 26, 2013, the chancery court granted Drew's motion for summary judgment.  The court ruled that the 2008 tax sale to U.S. Bank was void because the chancery clerk failed to comply with the notice requirements of Mississippi Code Annotated sections 27-43-1 (Rev. 2017) and 27-43-3 (Rev. 2010).

---

[1] *See* Miss. Code Ann. § 27-45-3 (Rev. 2017).

3

Therefore, the court set aside the tax sale and tax deed and confirmed Drew as the rightful owner of the property.

¶6.    On January 6, 2014, Rebuild filed a motion for reconsideration. Rebuild argued that, pursuant to the 2010 Agreement, Drew had waived her right to challenge the validity of the 2008 tax sale. On May 8, 2017, the chancery court entered an order denying Rebuild's motion. The court held that at the time the parties entered into the 2010 Agreement, Rebuild had not acquired title to the property and therefore had nothing to convey to Drew.[2] The court also reasoned that because the 2008 tax sale was void, U.S. Bank never obtained good title to the property and therefore Rebuild never could have obtained good title either. Rebuild did not file a timely appeal from the final judgment entered in *Drew I*. Therefore, the decision and judgment of the chancery court in *Drew I* became final.[3]

## II.    The 2009 Tax Sale

¶7.    Drew also failed to pay ad valorem taxes of $566.53 that were assessed on her home

---

[2] As noted above, Rebuild represented in the 2010 Agreement that it had acquired title, but that representation was untrue. Rebuild did not acquire title until May 2011.

[3] On August 7, 2017, Rebuild filed a notice of appeal in *Drew I* that purported to appeal a judgment entered on July 6, 2017. However, the only order entered on July 6 was the chancery court's final order denying Rebuild's motion for reconsideration in a separate case involving the same parties ("*Drew II*"), which is discussed below. Rebuild also filed a notice of appeal from the July 6 order in *Drew II*. The notice of appeal in *Drew II* was timely and is the basis for appellate jurisdiction in this case. However, the Mississippi Supreme Court ordered Rebuild to show cause why the appeal in *Drew I* should not be dismissed. *Rebuild Am. Inc. v. Drew*, No. 2017-TS-01102 (Miss. Aug. 11, 2017). Rebuild responded that it did not file a timely notice of appeal from the final judgment in *Drew I* because it did not immediately realize that the final judgment in *Drew I* amounted to a final and definitive ruling on the effect and enforceability of the 2010 Agreement. The Supreme Court was unpersuaded by this argument and dismissed the appeal in *Drew I* as untimely. *See Rebuild Am. Inc. v. Drew*, No. 2017-TS-01102 (Miss. Mar. 20, 2018).

for the year 2008. On August 31, 2009, U.S. Bank Custodian - Sass Muni V ("U.S. Bank")[4] bought the property at a tax sale for the 2008 taxes, initiating the two-year statutory redemption period.

¶8. On July 20, 2011, the chancery clerk sent correspondence to Drew by certified mail. Drew signed for delivery on August 1, 2011. However, the record does not contain a copy of the correspondence. In addition, on June 23, 2011, the chancery clerk sent correspondence by certified mail to U.S. Bank. The record contains a delivery receipt for the certified letter to U.S. Bank, although the individual who signed for it was not identified, the signature is illegible, and the receipt is undated. The record also includes a copy of a letter from the chancery clerk addressed to both Drew and U.S. Bank. The letter, which was dated February 11, 2011, advised that Drew's home had been sold at a tax sale and had to be redeemed on or before August 31, 2011. However, Hancock County Sheriff's Department stamped the letter as "unexecuted." Moreover, the record contains a September 14, 2011 letter from the sheriff to the chancery clerk notifying the clerk that the sheriff would not be delivering any tax sale notices "due to the shortage of . . . staff and late time frame of receiving the [notices]." Finally, the record includes an undated certification that a deputy chancery clerk made a diligent effort to locate Drew and U.S. Bank. That document was filed in the county land records on November 29, 2011.

¶9. Drew did not redeem the property by paying the 2008 taxes within the redemption

---

[4] The 2008 and 2009 tax sale purchasers have similar but not identical names. The legal relationship between the two entities is not entirely clear but does not appear to be material to any of the issues on appeal. Accordingly, we refer to both as "U.S. Bank."

period. On November 14, 2011, the chancery clerk executed a tax deed that purported to convey title to the property to U.S. Bank. The deed was recorded on November 29, 2011. On December 20, 2011, U.S. Bank executed a quitclaim deed transferring its interest in the property to Rebuild.

### III. 2010 Tax Sale

¶10. Drew also failed to pay ad valorem taxes of $535.99 that were assessed on her home for the year 2009. On August 31, 2010, E.B. Dorev Holdings ("Dorev") bought the property at a tax sale for the 2009 taxes, which again initiated a two-year redemption period. The record contains a copy of a letter from the chancery clerk, dated January 4, 2012, notifying Drew and U.S. Bank of the 2010 tax sale to Dorev. The record also contains a U.S. Postal Service delivery notification that appears to show delivery to U.S. Bank on June 25, 2012. However, there is nothing in the record to indicate that Drew received personal service of notice of the sale or any other kind of notice required by statute. *See infra*.

¶11. No party attempted to redeem the property by paying the 2009 taxes. On November 16, 2012, the chancery clerk executed a tax deed that purported to convey the property to Dorev. On November 26, 2012, Dorev executed a quitclaim deed that conveyed its interest in the property to American Pride Properties. On February 15, 2013, American Pride Properties executed a quitclaim deed that conveyed its interest to Rebuild.

### IV. *Drew II*

¶12. In August 2013, Drew filed a complaint in the Hancock County Chancery Court to set aside the 2009 and 2010 tax sales and confirm her title to the property ("*Drew II*"). In

6

December 2013, Rebuild filed a motion for summary judgment, arguing that Drew waived her right to challenge the tax sales under her 2010 Agreement between the parties. In September 2015, Rebuild finally noticed its motion for a hearing. Drew then filed her own motion for summary judgment. Drew argued that the 2009 and 2010 tax sales and related tax deeds were void because the chancery clerk failed to comply with statutory notice requirements. Therefore, Drew argued, she remained the rightful owner of the property.

¶13. The chancery court granted summary judgment in favor of Drew. The court held that because the 2008 tax sale was set aside in *Drew I*, Drew remained the owner of the property at the time of the 2009 tax sale. Therefore, Drew was entitled to statutory notice. Because Drew did not receive personal service or any other timely statutory notice of her right to redeem, the 2009 tax sale was void.

¶14. As for the 2010 tax sale, the chancery court noted that the chancery clerk did give notice to U.S. Bank. However, U.S. Bank's claim to be the record owner of the property was dependent on a void tax sale. Therefore, the chancery court held that, at the time of the 2010 tax sale, "Drew retained her status as the legal owner of her residence as if the [prior] tax sale to U.S. Bank had not taken place." There was no evidence that Drew received any statutory notice related to the 2010 tax sale. Therefore, the chancery court held that the 2010 tax sale was also void.

¶15. Finally, the chancery court rejected Rebuild's argument that Drew waived her right to challenge the tax sales when she entered into the 2010 Agreement with Rebuild. The court stated that it had already addressed the same basic issue in its ruling in *Drew I* and the "same

7

reasoning applie[d] to the 2009 and 2010 sale[s]." Accordingly, the court held that the 2009 and 2010 tax sales and subsequent tax deeds were "set aside and held for naught."

¶16.    Rebuild subsequently filed a timely motion to alter or amend the judgment, which the chancery court denied. Rebuild then filed a timely notice of appeal.

## ANALYSIS

¶17.    On appeal, Rebuild argues that the chancery court erred by granting Drew's motion for summary judgment because (1) Drew waived her right to challenge the tax sales when she signed the 2010 Agreement with Rebuild and (2) Drew was not entitled to statutory notice following the 2009 and 2010 tax sales because by that time she was no longer the "record owner" of the property. Rebuild's appellate briefs include a few vague assertions that there are "issues of material fact," but Rebuild fails to identify any genuinely disputed facts that are material to the resolution of this case. Rather, Rebuild's appeal turns on two issues of law, which we address de novo. *Rebuild Am. Inc. v. Norris*, 64 So. 3d 499, 501 (¶7) (Miss. Ct. App. 2010), *aff'd*, 64 So. 3d 480 (Miss. 2011). In addressing these issues, we keep in mind that "statutes dealing with land forfeitures for delinquent taxes should be strictly construed in favor of the landowners." *Campbell Props. Inc. v. Cook*, No. 2017-CA-01340-SCT, 2018 WL 6381141, at *4 (¶12) (Miss. Dec. 6, 2018) (quoting *Reed v. Florimonte*, 987 So. 2d 967, 973 (¶15) (Miss. 2008)). Therefore, "[a]ny deviation from the statutorily mandated procedure renders the sale void." *Id.* "Mississippi's public policy is to protect landowners from losing property in tax sales." *Id.*

     **I.**     **The chancery court's ruling in *Drew I* forecloses Rebuild's argument that Drew waived her right to challenge the tax sales.**

8

¶18. As discussed above, in *Drew I*, the chancery court ruled that Drew was the rightful owner of the property because the chancery clerk failed to comply with the statutory notice requirements with respect to the 2008 tax sale. In *Drew I*, Rebuild argued that Drew had waived her right to challenge the tax sale pursuant to the 2010 Agreement between Drew and Rebuild. As noted above, the 2010 Agreement provides in relevant part: "[Drew] waives and releases all claims, demands, actions and disputes regarding any deficiencies or defects in the foreclosure proceedings and will hold [Rebuild], and prior holders of the tax sale certificates, harmless against any such claims, demands, actions, and disputes." However, in *Drew I*, the chancery court rejected Rebuild's argument. The chancery court held that the 2010 Agreement was unenforceable because Rebuild did not have title to the property that it promised to convey to Drew pursuant to the Agreement. As discussed above, the 2010 Agreement, drafted by Rebuild, represented that Rebuild had already acquired title to the property as of December 2, 2010. That simply was not true. Rebuild did not actually acquire title to the property until May 2011—approximately three months after the closing date set in the 2010 Agreement. In *Drew I*, the chancery court held that Rebuild "had nothing to convey to Drew" and that Rebuild's inability to "perform its end of the bargain" rendered the entire 2010 Agreement unenforceable. The chancery court's ruling in *Drew I* was not appealed and, thus, became final.

¶19. Despite the chancery court's ruling in *Drew I*, Rebuild now argues that the waiver provision in the 2010 Agreement precludes Drew from challenging the 2009 and 2010 tax sales at issue in this case. However, we agree with Drew that Rebuild's argument is

9

foreclosed by the chancery court's ruling in *Drew I*.

¶20.    The doctrine of "collateral estoppel" or "issue preclusion" "precludes parties from relitigating issues authoritatively decided on their merits in prior litigation to which they were parties or in privity." *McCarty v. Wood*, 249 So. 3d 425, 434 (¶30) (Miss. Ct. App. 2018) (emphasis omitted) (quoting *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 640 (Miss. 1991)), *cert. denied*, 250 So. 3d 1269 (Miss. 2018).   "Collateral estoppel precludes relitigating a specific issue, which was: (1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action." *Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 845 (¶21) (Miss. 2016). In addition, for the doctrine to apply, there must be "an identity of the parties from one suit to the next." *Hollis v. Hollis*, 650 So. 2d 1371, 1378 (Miss. 1995) (quoting *Molpus*, 578 So. 2d at 640); *see also Hogan v. Buckingham ex rel. Buckingham*, 730 So. 2d 15, 17-18 (¶¶10-11) (Miss. 1998) (explaining the parties must be "substantially identical," although "strict identity of the parties is not necessary").

¶21.    All of the requirements of collateral estoppel are met in this case.  The chancery court's final order in *Drew I* addressed the 2010 Agreement and, specifically, Rebuild's waiver argument.  The court ruled that Rebuild could not enforce the 2010 Agreement, including its waiver provision.  Whether the court's ruling in *Drew I* was right or wrong, it finally decided that the 2010 Agreement is unenforceable.  Therefore, that issue is not subject to relitigation here in *Drew II*.  Based on the chancery court's decision in *Drew I*, Rebuild cannot enforce the 2010 Agreement.

10

**II.    The chancellor did not err in declaring the 2009 and 2010 tax sales void for failure to provide notice to Drew.**

¶22.    In Mississippi, a landowner whose property is sold for taxes may redeem the property at any time within two years after the tax sale by paying the chancery clerk all taxes for which the land was sold plus costs, statutory damages, and interest.  Miss. Code Ann. § 27-45-3 (Rev. 2017).  The chancery clerk is required by law to issue notice of the tax sale and the landowner's statutory right of redemption.  Miss. Code Ann. § 27-43-1 (Rev. 2017).  The notice must be issued within 180 days and not less than 60 days prior to the expiration of the statutory redemption period.  *Id.*  The notice must be provided to the "record owner of the land sold as of [180] days prior to the expiration of the time of redemption."  *Id.*

¶23.    Mississippi Code Annotated section 27-43-3 sets out the requirements for such notice. At all times relevant to this case, section 27-43-3 provided as follows:

> The [chancery] clerk shall issue the notice [of the tax sale and statutory right of redemption] to the sheriff of the county of the reputed owner's residence, if he be a resident of the State of Mississippi, and the sheriff shall be required to serve personal notice as summons issued from the courts are served, and make his return to the chancery clerk issuing same.  The clerk shall also mail a copy of same to the reputed owner at his usual street address, if same can be ascertained after diligent search and inquiry, or to his post office address if only that can be ascertained, and he shall note such action on the tax sales record.  The clerk shall also be required to publish the name and address of the reputed owner of the property and the legal description of such property in a public newspaper of the county in which the land is located, or if no newspaper is published as such, then in a newspaper having a general circulation in such county.  Such publication shall be made at least forty-five (45) days prior to the expiration of the redemption period.
>
> Notice by mail shall be by registered or certified mail.  In the event the notice by mail is returned undelivered and the personal notice as hereinabove required to be served by the sheriff is returned not found, then the clerk shall make further search and inquiry to ascertain the reputed owner's street and

11

post office address. If the reputed owner's street or post office address is ascertained after the additional search and inquiry, the clerk shall again issue notice as hereinabove set out.  If personal notice is again issued and it is again returned not found and if notice by mail is again returned undelivered, then the clerk shall file an affidavit to that effect and shall specify therein the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post office address and said affidavit shall be retained as a permanent record in the office of the clerk and such action shall be noted on the tax sales record.  If the clerk is still unable to ascertain the reputed owner's street or post office address after making search and inquiry for the second time, then it shall not be necessary to issue any additional notice but the clerk shall file an affidavit specifying therein the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post office address and said affidavit shall be retained as a permanent record in the office of the clerk and such action shall be noted on the tax sale record.

. . . .

The failure of the landowner to actually receive the notice herein required shall not render the title void, provided the clerk and sheriff have complied with the duties herein prescribed for them.

Should the clerk inadvertently fail to send notice as prescribed in this section, then such sale shall be void and the clerk shall not be liable to the purchaser or owner upon refund of all purchase money paid.

Miss. Code Ann. § 27-43-3 (Rev. 2010).[5]

¶24.    Thus, "[s]ection 27-43-3 generally requires the chancery clerk to provide notice of the tax sale to the property's reputed owner in three forms": (1) by personal service, (2) by mail, and (3) by publication.  *Rebuild Am. Inc. v. Norris*, 64 So. 3d 480, 481 (¶3) (Miss. 2011).  If the chancery clerk fails to provide notice to the property owner in compliance with the statutory requirements, the tax sale is void.  *SASS Muni-V LLC v. DeSoto Cty.*, 170 So. 3d

_____

[5] Section 27-43-3 was amended effective July 1, 2013, which was after the events at issue in this litigation.  *See* 2013 Miss. Laws ch. 365, § 1 (S.B. 2111).  At all times relevant to the tax sales at issue in this case, section 27-43-3 read as quoted above.

441, 446 (¶14) (Miss. 2015).

¶25. In this case, the chancery court ruled that the 2009 and 2010 tax sales were void because the chancery clerk did not provide Drew with notice required by statute. On appeal, Rebuild does not dispute that the chancery clerk failed to provide Drew with the notices required by the relevant statutes. Rather, Rebuild argues that Drew was not *entitled* to notice because she was no longer the record owner of the property by the time such notices were due.

¶26. The following relevant dates provide some context for Rebuild's argument:

| | **2008 Tax Sale** (***Drew I***) | **2009 Tax Sale** (***Drew II***) | **2010 Tax Sale** (***Drew II***) |
|---|---|---|---|
| Date of tax sale | 8/25/2008 | 8/31/2009 | 8/31/2010 |
| Expiration of redemption period | 8/25/2010 | 8/31/2011 | 8/31/2012 |
| 180 days prior to expiration of redemption period | 2/26/2010 | 3/4/2011 | 3/4/2012 |
| 60 days prior to expiration of redemption period | 6/26/2010 | 7/2/2011 | 7/2/2012 |
| Clerk's conveyance | 12/1/2010 to U.S. Bank (declared **void** in *Drew I*) | 11/14/2011 (to U.S. Bank) | 11/16/2012 (to Dorev) |

¶27. As discussed above, the 2008 tax sale was declared void and set aside in *Drew I.* Nonetheless, Rebuild argues that Drew was not entitled to statutory notice of her right of redemption following the 2009 tax sale because she was no longer the "record owner" of the property "as of [180] days prior to the expiration of the time of redemption," Miss. Code

13

Ann. § 27-43-1, i.e., March 4, 2011.[6]  Relying on the December 1, 2010 tax deed to U.S.

Bank—the same deed declared void in *Drew I*—Rebuild argues that U.S. Bank was by then

the only "record owner" of the property.  Rebuild makes a similar argument with respect to

the 2010 tax sale.[7]  Rebuild contends that Drew was no longer the record owner as of 180

days prior to the end of that redemption period because by then Rebuild had obtained title to

the property from U.S. Bank, which had acquired the property through tax deeds.

¶28.    In short, Rebuild argues that even though the 2008 tax sale and subsequent tax deed

were void for lack of notice to Drew, the deed nonetheless eliminated Drew as a record

owner of the property entitled to notice following the 2009 tax sale.  Rebuild likewise argues

that even though the clerk failed to provide Drew with statutory notice of the 2009 tax sale,

tax deeds had by then eliminated Drew's right to notice of the 2010 tax sale.  We cannot

agree with Rebuild's argument.

¶29.    Recently, our Supreme Court held that "the chancery clerk's failure to comply fully

with the statutory notice requirements" renders a tax sale not just void but "void ab initio."

*City of Horn Lake v. Sass Muni-V LLC*, No. 2013-CA-01490-SCT, 2018 WL 2731592, at *3

(¶13) (Miss. June 7, 2018).  The tax sale is "not simply voidable." *Id.*  It has "no legal effect"

whatsoever. *Id.*  A transaction that is "void ab initio" is null and void from its inception, and

as a matter of law it is as if the transaction never even happened.  *Wells Fargo Advisors LLC*

---

[6] Again, there is no dispute that Drew did not receive statutory notice of the 2009 tax sale.  Indeed, the record contains a letter from the sheriff informing the chancery clerk that the sheriff would not be delivering any tax sale notices.

[7] There is no evidence in the record that Drew received statutory notice of the 2010 tax sale by personal service, mail, or publication.

14

*v. Runnels*, 126 So. 3d 137, 144 (¶25) (Miss. Ct. App. 2013) (citing *Hood ex rel. State v. Barbour*, 958 So. 2d 790, 815-16 (¶¶87, 89) (Miss. 2007)).

¶30.   Applying this rule to the present case, Drew was entitled to notice of each respective tax sale. As the chancery court ruled in *Drew I*, the 2008 tax sale was void for lack of proper notice to Drew. As a result, the 2008 sale was not only void but "void ab initio"—void from the very beginning, as if it never happened. Therefore, Drew remained the rightful owner of the property and was entitled to statutory notice of the 2009 tax sale. There is no dispute that the chancery clerk again failed to provide Drew with statutory notice of the 2009 tax sale. Therefore, the 2009 tax sale was also void ab initio, and Drew remained the rightful owner entitled to statutory notice of the 2010 tax sale. Finally, there is no dispute that the chancery clerk did not provide Drew with statutory notice of the 2010 tax sale. Accordingly, that sale was also void ab initio. Thus, each sale at issue in this case was void ab initio due to a failure to comply with statutory notice requirements. Therefore, the chancery court properly set aside the tax sales and declared Drew the rightful owner of the property.

## CONCLUSION

¶31.   Drew was *never* given proper statutory notice that her property had been sold for taxes or of her right to redeem the property. As our Supreme Court recently reiterated, Mississippi law takes "a hard-line approach" to this issue: "the redemption-notice statute must be followed strictly." *Campbell Props.*, 2018 WL 6381141, at *4 (¶15). When the statute is not followed strictly, the tax sale is void ab initio—it has no legal effect whatsoever, and it is as if the sale never happened. *City of Horn Lake*, 2018 WL 2731592, at *3 (¶13). Because each

15

successive tax sale in this case was void ab initio, Drew remains the rightful owner of the property.  Accordingly, the judgment of the chancery court is **AFFIRMED**.

**BARNES AND CARLTON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.  GRIFFIS, C.J., AND TINDELL, J., NOT PARTICIPATING.**