# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00518-COA

**GREATER NEW HAMILTON GROVE BAPTIST CHURCH AND TRUSTEE TOMMIE BURNS**　　　　　**APPELLANTS**

**v.**

**HAMILTON GROVE MISSIONARY BAPTIST CHURCH A/K/A GREATER NEW HAMILTON GROVE**　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/2022 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | JOHN DENVER FIKE |
| ATTORNEYS FOR APPELLEE: | AMORYA MYONNA ORR MICHAEL D. SIMMONS |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 08/01/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND SMITH, JJ.**

**WILSON, P.J., FOR THE COURT**:

¶1.　Mississippi Code Annotated section 79-11-31(1) (Rev. 2013) provides that real property held by an organized church "shall not be divested out of the same, or encumbered, except by a deed, deed of trust, or mortgage duly executed under the authority of a resolution adopted by a majority vote of the members present at a meeting [(a)] duly called for that purpose" and (b) attended by "at least twenty percent . . . of the members in good standing." In this case, following a bench trial, the chancellor found that a deed purporting to convey real property owned by a church in Raymond was invalid because it was not authorized by

a resolution adopted in accordance with section 79-11-31(1). Therefore, the chancellor held that the deed was invalid and canceled the deed. Substantial evidence supports the chancellor's finding. Therefore, the judgment of the chancery court is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2. The church known as Greater New Hamilton Grove Baptist Church or Hamilton Grove Missionary Baptist Church was founded in Raymond in 1908. Kenya Martin was elected pastor of the church in 2013.

¶3. A full understanding of the present case requires some familiarity with a prior lawsuit involving the church. In July 2017, Martin, who is both the church's pastor and a lawyer, filed an emergency petition for a temporary restraining order (TRO) in the Hinds County Chancery Court, seeking to prohibit a meeting at the church that apparently involved an effort to remove Martin as pastor. The case was assigned to Chancellor Dewayne Thomas, who granted a TRO without notice to any respondents. Five days later, Martin filed an amended petition for a TRO and permanent restraining order that, as described by the chancery court, "assert[ed] numerous claims regarding both ecclesiastical and legal matters." The amended petition named Alfrenett Johnson-Orr and "John Does 1-5" as the defendants. Johnson-Orr filed a motion to dissolve the TRO, but prior to a hearing on that motion, the parties informed the court "that an agreement on how to proceed had been reached." Specifically, the parties had agreed on a moderator who would preside over a congregational meeting regarding the church's "ecclesiastical issues." Therefore, in August 2017, the court

entered an agreed order (presented by the parties) that stated the other "issues raised in the [a]mended [p]etition [had been] resolved" and were "therefore moot."

¶4.     The docket in the 2017 case shows that significant activity continued in the case following the entry of the agreed order; however, the record in the present case includes only a few of the orders and other documents filed in the 2017 case. In 2019, attorney Amorya Orr entered an appearance as counsel for the church.[1]  The same day, Martin filed an objection to her appearance, arguing that he alone represented the church as both its attorney and pastor. Orr and Martin submitted conflicting evidence regarding the church's deacons, membership, and true legal representation. However, the chancery court stated that it would not "determine the proper trustees, deacon body, and congregational members," which were "ecclesiastical questions." The court found that the church was capable of determining those issues for itself pursuant to its bylaws and without further judicial intervention. The court also cited to the earlier agreed order, which stated that the other issues in the case had been "resolved." Therefore, the court entered an order granting a motion to dismiss that Orr had filed on behalf of the church. Martin filed a motion for reconsideration on behalf of the church, which the chancery court denied, and a notice of appeal. However, the appeal was dismissed for failure to pay costs.

¶5.     In August 2020, "Hamilton Grove Missionary Baptist Church a/k/a Greater New Hamilton Grove Baptist Church" (the appellee here) commenced the present action by filing

_____

[1] Orr is Johnson-Orr's daughter.

a "Petition to Overturn Warranty Deed and Land Conveyance" in the Hinds County Chancery Court.[2] The petition, which was filed and verified by attorney Orr, named Tommie Burns (an appellant here), "Mississippi Non-Profit Corporation #1023031," and "John Does 1-5" as the defendants. The case was assigned to Chancellor Denise Owens.

¶6. The petition alleged that the true church "is not a registered corporation but is a religious congregation of members" founded in 1908. The nonprofit corporation named as a defendant in this action is incorporated as "Greater New Hamilton Grove Baptist Church," but the plaintiff in this action denies that the nonprofit entity *is* the church and therefore declines to call it by that name. To avoid confusion, we refer to the nonprofit entity as "the Nonprofit." The Nonprofit (an appellant here) was established in 2013, with Martin listed as its sole incorporator and registered agent.

¶7. The petition alleged that in 1993, the church had obtained title to real property via a warranty deed conveying the property to "the trustees of Hamilton Grove Missionary Baptist Church, Odell Burns, James Burns, Eugene Scott Jr., Aaron Frank, and Fred Donaldson, and/or their successors and assigns."

¶8. The petition further alleged that on June 3, 2014, Tommie Burns executed an unauthorized warranty deed that purported to convey the property to "Greater New Hamilton Grove Baptist Church." The petition alleged that the conveyance violated the church's

---

[2] The petition stated that the church had operated by both names and as "Hamilton Grove Baptist Church" at different times in its history.

4

bylaws because it was not authorized by a vote of the church's members. The petition also alleged that the Nonprofit had been created without the members' knowledge and that Burns had misrepresented himself to be the church's sole trustee. The petition therefore requested that the court set aside the June 2014 warranty deed Burns executed.

¶9. The petition included a copy of the disputed warranty deed, together with a resolution that was filed in the land records along with the deed. The resolution purportedly authorized Burns to execute the deed and was signed by three deacons—Ozie Thomas, Fred Scott, and Willie West—and by Martin, as the church's pastor. At trial, Scott claimed that his signature had been forged, although Thomas testified that he witnessed Scott sign the resolution.

¶10. The defendants, represented by Martin,[3] filed a motion to dismiss. They argued that the chancery court lacked subject matter jurisdiction because the petition concerned an ecclesiastical matter; that the petition was barred by res judicata, collateral estoppel, and the statute of limitations; and that the plaintiff lacked standing. In February 2021, the court entered an order rejecting each of the defendants' arguments and denying the motion to dismiss. The defendants filed a petition for permission to appeal the interlocutory order, which the Mississippi Supreme Court denied. *Greater New Hamilton Grove Baptist Church*

---

[3] Martin's brother Warren also signed the motion to dismiss as counsel for Martin "individually." The petition did not name Martin as a defendant, although it did name "John Does 1-5" as unknown persons who acted in concert with the named defendants. Warren later withdrew as counsel, and new counsel entered an appearance for the defendants. Prior to trial, the chancery court entered an order disqualifying Martin from acting as counsel in the case, in part because he would be a witness at trial.

5

*v. Hamilton Grove Missionary Baptist Church*, No. 2021-M-00351-SCT (Miss. June 30, 2021) (panel order).

¶11.    The defendants (i.e., the Nonprofit and Burns) subsequently filed a motion for summary judgment.  They argued that the plaintiff lacked standing; that there was no proof of fraud; that the church's bylaws did not specify how the church's property should be held or require a vote of the congregation; that the plaintiff's challenge to the deed should have been asserted as a compulsory counterclaim in the 2017 lawsuit; and that the First Amendment to the United States Constitution barred the court from exercising jurisdiction over "ecclesiastical" matters such as how the church should hold its property.

¶12.    The plaintiff then filed an amended petition to set aside the subject deed.  The amended petition was substantially similar to the original petition and was signed and verified by Fred Scott and Eugene Scott Jr. in their capacities as deacons of the church.  The court granted the plaintiff leave to file the amended petition.  The plaintiff also filed a motion for a declaratory judgment to establish that the Nonprofit does not own the church's real property.

¶13.    In November 2021, the court denied the defendants' motion for summary judgment, holding that there were genuine issues of material fact.  The court also deferred ruling on the plaintiff's motion for a declaratory judgment until trial.  The defendants filed a petition for permission to appeal, which the Mississippi Supreme Court denied.  *Greater New Hamilton Grove Baptist Church v. Hamilton Grove Missionary Baptist Church*, No. 2021-M-01326-

SCT (Miss. Dec. 6, 2021) (panel order).

¶14. The case proceeded to trial in February 2022. The day before the trial began, the defendants produced documents that they claimed were handwritten minutes of church business meetings held on May 25, 2013, and May 31, 2014. The one-page May 25, 2013 minutes purport to show that the congregation authorized Martin to create the Nonprofit; however, the minutes show that only seven members were present, including Martin and his wife. The one-page May 31, 2014 minutes purport to show that the congregation authorized Burns to execute the June 2014 warranty deed; however, these minutes mention only Martin and Johnson-Orr and fail to identify any other members or state how many members were present. Additional questions regarding these documents and why they were not produced sooner are discussed in more detail *infra*.

¶15. At trial, Fred Scott testified that he is a deacon of the church and has been a member of the church his entire life. Scott testified that the execution of a deed conveying the church's property would require a congregational meeting and a vote of the church's members. Scott testified that no such meeting was called or held to authorize Burns to execute the subject warranty deed. Scott testified that Martin had locked Scott and other church members out of the church and had called the police on them when they attempted to enter the church. Scott presented a church membership list purporting to show that the church had 64 members as of September 2021, including Scott. He also produced typed minutes from a congregational meeting purporting to show that the church members had

7

voted to hire attorney Orr to represent the church. The minutes noted that the meeting was held "outside (on the church grounds) in the rain" because Martin had "locked [the members] out of the building." As noted above, Scott also testified that his signature had been forged on the deacons' resolution authorizing Burns to execute the June 2014 warranty deed.

¶16. Velma Johnson testified that she has been a member of the church since she was a child. She previously served as the church's secretary, and her responsibilities included keeping the minutes of congregational meetings. She testified that there had never been a congregational meeting to authorize the creation of the Nonprofit or the execution of the subject warranty deed. Velma denied that church meetings were held on May 25, 2013, and May 31, 2014, and she testified that the handwritten notes produced by the defendants were not in the proper or usual form. Velma stated that the church had "over 100 members" at that time. She also testified that the church's members had voted to remove Martin as the church's pastor in 2018. Like Scott, Velma testified that Martin had locked the church's members out of the church and called the police on them.

¶17. Vicky Johnson testified that she had been a member of the church for fifty-five years. Vicky testified that no church meeting was held in 2013 or 2014 to authorize the creation of the Nonprofit or the subject warranty deed. She testified that a congregational meeting and vote of church members would be required to convey church property. Vicky testified that she had continued to attend worship services to keep an eye on the church's property. She testified that by 2021, the average Sunday attendance had dropped to "about 15."

8

¶18. Johnson-Orr testified that she has been a member of the church for more than sixty years. She testified that a congregational meeting and vote of the members would be required to transfer church property. However, she testified that no such meeting was held to establish the Nonprofit or to transfer church property. The handwritten minutes that the defendants produced for meetings allegedly held on May 25, 2013, and May 31, 2014, purport to show that Johnson-Orr was in attendance at both meetings. However, Johnson-Orr testified that she did not attend either meeting and that no such congregational meeting was ever noticed or held. Johnson-Orr testified that she and other members of the church first discovered the subject warranty deed after the 2017 action had been dismissed. The plaintiff rested its case following Johnson-Orr's testimony.

¶19. The defendants called Lorraine Hewlitt as their first witness. Hewlett testified that she currently serves as the church's financial secretary. Hewlitt testified that Johnson-Orr and Velma are not current church members. Hewlitt testified that Vicky regularly attends the church and contributes financially, but she does not "tithe." Hewlitt stated that Vicky "doesn't qualify . . . as a member under the bylaws" because she does not tithe.[4] But on cross-examination, Hewlitt admitted that she was not a member of the church in 2013 or 2014 and that she has no knowledge regarding the circumstances surrounding the drafting or execution of the subject warranty deed. In addition, Hewlitt offered no testimony

---

[4] Hewlitt did not explain the basis of her opinion that Vicky does not "tithe," and the church's bylaws do not mention "tithing" or expressly state that tithing is a requirement of membership. In any event, the issue is not material to this appeal.

regarding any individual's membership status as of 2013 or 2014.

¶20. Ozie Thomas testified that he was a deacon in 2013 and 2014. He testified that church business meetings were held on May 25, 2013, and May 31, 2014, and that the meetings were duly noticed and announced from the pulpit. Thomas testified that Johnson-Orr attended both of meetings and that he witnessed Fred Scott sign the resolution authorizing Burns to execute the subject warranty deed. Thomas did not testify regarding how many members attended the May 25, 2013 and May 31, 2014 meetings. He stated that typically "5 or 6, or sometimes 10 or 12" members would attend such meetings.

¶21. Martin was the final witness. He testified that duly noticed church meetings were held on May 25, 2013, and May 31, 2014, that Johnson-Orr attended both meetings, and that the members present voted to approve the creation of the Nonprofit and the execution of the subject warranty deed. Martin testified that he located the handwritten minutes for the meeting only a few days before trial because he had to review "thousands of minutes" "[t]hat spanned 30, 40 years" in order to respond to the plaintiff's discovery requests. Initially, Martin was equivocal as to whether he drafted the minutes, but he ultimately stated that he did draft the minutes. Martin also testified that he witnessed Fred Scott sign the resolution authorizing Burns to execute the subject warranty deed.

¶22. In May 2022, the chancellor entered an opinion and final judgment canceling the subject warranty deed. The chancellor found that the deed failed to comply with Mississippi Code Annotated section 79-11-31(1), which provides that "title to the real property" owned

10

by an organized religious society "shall not be divested out of the same, or encumbered, except by a deed, deed of trust, or mortgage duly executed under the authority of a resolution adopted by a majority vote of the members present at a meeting duly called for that purpose, at which meeting at least twenty percent (20%) of the members in good standing of such organized society must be present." The statute further states that "[t]he minutes of such meeting shall be entered in the official record book of such society, and the aforesaid resolution shall designate which officers, trustees or managers of such society are to execute such deed, deed of trust, or mortgage." *Id.* The chancellor found that there were at least sixty members of the church at the time, but no more than seven members attended the alleged meetings. Therefore, the chancellor held that the deed was "legally unauthorized and must be canceled." The defendants filed a notice of appeal.

**ANALYSIS**

¶23. Our standard of review is limited. "[W]e will not disturb the factual findings of a chancellor when supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Briggs v. Hughes*, 316 So. 3d 193, 198 (¶20) (Miss. 2021) (quotation marks omitted). We review questions of law de novo. *Id.* at 196 (¶10).

¶24. The defendants identify four issues in their statement of the issues on appeal. They argue that the chancery court (1) "lacked subject matter jurisdiction under the ecclesiastical abstention doctrine"; (2) "erred in failing to apply the minutes rule"; (3) "abused its

11

discretion in allowing [the plaintiff] leave to amend the petition under [Mississippi Rule of Civil Procedure] 15"; and (4) erred because "the corporateness was outside the scope of the pleadings," and "the corporation was legally established."

¶25. Before we address the various issues identified by the defendants on appeal, we first directly address the legal basis of the final judgment canceling the subject warranty deed, i.e., the chancellor's finding that the deed was not authorized by "a resolution adopted by a majority vote of the members present at a meeting [(a)] duly called for that purpose" and (b) attended by at least twenty percent of the church's "members in good standing." Miss. Code Ann. § 79-11-31(1). We conclude that substantial evidence supports the chancellor's finding and, therefore, the cancellation of the deed.

¶26. As recounted above, just before trial the defendants produced documents purporting to be the handwritten minutes of church meetings held on May 25, 2013, and May 31, 2014. At trial, Martin testified that the minutes were in his handwriting and that he found them only a few days before trial. The May 25, 2013 minutes purport to show that the members present authorized Martin to create the Nonprofit, but the minutes show that only seven members were present, including Martin and his wife. Moreover, although the minutes show that Johnson-Orr was present, she testified at trial that she did not attend the meeting, and she denied that any such meeting was duly noticed or held. The May 31, 2014 minutes purport to show that those present authorized the subject warranty deed, but the minutes fail to state how many members were present. Moreover, although these minutes show that Johnson-Orr

12

was present, Johnson-Orr testified that she did not attend this meeting either and that no such meeting was ever noticed or held. On behalf of the defendants, neither Martin nor any other witness testified regarding how many church members were present at the alleged meeting on May 31, 2014. Moreover, Velma testified that the church had over 100 members at that time. Based on the evidence presented at trial, we cannot say that the chancellor clearly erred by finding that the defendants failed to show that a resolution approving the subject warranty deed was approved at a duly noticed meeting attended by twenty percent of the church's members. Rather, there is substantial evidence to support the chancellor's finding.

¶27. It follows from the chancellor's factual finding that the chancellor did not err by canceling the deed pursuant to section 79-11-31(1). This Court previously applied section 79-11-31(1) in *Sones v. Sones Chapel Baptist Church ex rel. Lumpkin*, 946 So. 2d 833, 836-37 (¶¶9-11) (Miss. Ct. App. 2007). In *Sones*, the church's members approved a resolution authorizing the church's trustees to exchange deeds with a neighboring landowner to correct an erroneous legal description in a prior deed. *Id.* at 834 (¶¶3-4). The new deed conveying the property to the church correctly described the land but also included a reverter clause providing that the church's property would revert to the grantors should it ever cease to be used as the church's place of worship. *Id.* at 834-35 (¶4). Years later, the grantors sought to enforce the reverter clause, but the chancellor canceled the clause on the ground that it was not authorized by a resolution as required by section 79-11-31(1). *Id.* at 835 (¶6). On appeal, this Court affirmed, reasoning that the reverter clause "create[d] the possibility that the

13

[c]hurch's real property [could] be divested without the resolution required by [s]ection 79-11-31." *Id.* at 836 (¶11). Because the resolution authorizing the deed did not "specifically authorize[] the [reverter] clause," the chancellor properly canceled the clause. *Id.* Likewise, in the present case there is no evidence that the subject warranty deed was authorized by a resolution of the church's members that satisfied the requirements of section 79-11-31(1). Accordingly, the chancellor did not err by canceling the deed.

¶28. We now address the specific issues raised by the defendants on appeal.

## I.     The chancery court had subject matter jurisdiction.

¶29. Citing *Blue v. Jones*, 230 So. 2d 569 (Miss. 1970), the defendants contend that the chancery court lacked subject matter jurisdiction over this dispute under the "ecclesiastical abstention doctrine." They argue that "[t]he central issue is who shall control the [church's] property moving forward, thus making the central issue ecclesiastical." We disagree.

¶30. In *Blue*, the Mississippi Supreme Court stated as follows:

> [T]he question of who are the proper trustees of the property of this congregational church, and the identity of the pastor and dea[c]ons are ecclesiastical questions rather than issues of property rights. The government of a Baptist Church is congregational and democratic, with each church a distinct organization, independent of others. The members of the church have full power to call a pastor and elect property trustees and deacons. In a long line of decisions, this Court has held that it will not interfere to determine questions involving the government of a congregational type of church.

*Id.* at 569-70 (citation omitted).

¶31. In the present case, the chancery court did *not* address or decide any "ecclesiastical questions." Likewise, we do not decide, and express no opinion regarding, any question of

14

who are the true members, deacons, trustees, or pastor of this church. There appears to be a great deal of disagreement regarding those very basic issues pertaining to the church's government, and our decision in this case will not resolve any of them.

¶32. All that we resolve in this case are secular "issues of property rights." *Id.* at 570. Our Supreme Court has stated, "States have an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership and control of church property can be determined conclusively." *Schmidt v. Cath. Diocese of Biloxi*, 18 So. 3d 814, 823 (¶20) (Miss. 2009) (quotation marks omitted). The First Amendment to the United States Constitution "forbids civil courts from resolving church property disputes by inquiring into and resolving disputed issues of religious doctrine and practice." *Id.* at 824 (¶22) (quoting *Church of God Pentecostal v. Freewill Pentecostal Church of God*, 716 So. 2d 200, 204 (Miss. 1998)). But "[s]tates are free to adopt any method for adjudicating church property disputes, so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith." *Id.* (quotation marks omitted). To that end, our Supreme Court "has adopted the 'neutral principles of law' approach for resolving church property disputes." *Id.* at (¶23). "The neutral-principles approach relies on objective, traditional concepts of trust and property law." *Id.* (quotation marks and ellipsis omitted). This approach permits "a completely secular examination of deeds to the church property [and] *state statutes . . . .*" *Id.* (emphasis added) (quoting *Church of God Pentecostal*, 716 So. 2d at 205). We may resolve churches'

15

property disputes as long as we do not "rely[] on religious precepts" or "resolv[e] any religious controversy." *Id.*

¶33. In the present case, we do not wade into any "ecclesiastical" controversies related to religious doctrines, nor do we make any determination regarding the identity of the true members, officers, or pastor of this church. Rather, we simply affirm the chancellor's finding that the subject warranty deed was invalid because it was not authorized by a congregational meeting, vote, and resolution that satisfied the requirements of Mississippi Code Annotated section 79-11-31(1). The chancellor properly made that determination without offending the First Amendment to the United States Constitution.

**II.     The "minutes rule" is inapplicable.**

¶34. The defendants next argue that "the chancery court erred in failing to apply the minutes rule." This argument is without merit for two reasons. First, the minutes rule has nothing to do with this case. The "minutes rule" is "that *public boards* speak only through their minutes and that their acts are evidenced solely by entries on their minutes." *KPMG LLP v. Singing River Health Sys.*, 283 So. 3d 662, 669 (¶19) (Miss. 2018) (emphasis added). Because a church is not a public board, the minutes rule does not apply.

¶35. Second, the minutes produced by defendants do not establish that the subject warranty deed was properly authorized by a resolution adopted by a majority of the members present at a duly noticed meeting attended by at least twenty percent of the church's members. The handwritten minutes produced on the eve of trial seem to raise more questions than they

16

answer.  But even accepting those minutes at face value, they do not validate the subject deed.  Thus, even it were applicable, the "minutes rule" would not help the defendants.

### III. The chancellor did not abuse her discretion by granting the plaintiff leave to file an amended petition.

¶36.    The defendants next argue that the chancellor abused her discretion by allowing the plaintiff to file an amended petition.  The original petition, filed in August 2020, and the amended petition, filed a year later, are substantially similar.  The only notable difference is that the original petition was verified by counsel (Orr), and the amended petition was verified by Fred Scott and Eugene Scott, who stated that they are deacons of the church.

¶37.    "Motions for leave to amend are left to the trial judge's sound discretion."  *Simmons v. Thompson Mach. of Miss. Inc.*, 631 So. 2d 798, 800 (Miss. 1994).  Therefore, we review the trial judge's ruling only for an abuse of discretion.  *Webb v. Braswell*, 930 So. 2d 387, 392 (¶8) (Miss. 2006).  The Mississippi Rules of Civil Procedure provide that leave to amend "*shall* be freely given when justice so requires."  M.R.C.P. 15(a) (emphasis added).  "[T]his mandate is to be heeded[.]  [I]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Frank v. Dore*, 635 So. 2d 1369, 1375 (Miss. 1994) (alteration omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Therefore, "an amendment should be denied only if the amendment would cause actual prejudice to the opposite party."  *TXG Intrastate Pipeline Co. v. Grossnickle*, 716 So. 2d 991, 1011 (¶59) (Miss. 1997).

¶38.    We find no abuse of discretion in this case.  Orr should not have verified the original

17

petition, as she lacked personal knowledge of the facts alleged. But her verification of the original petition ultimately had no practical significance or any impact on the case. The defendants seem to argue that amendment prejudiced them because the original petition would have been barred or precluded by the final judgment in the 2017 action for the reason that Orr had also entered an appearance and made certain arguments as counsel in the 2017 action. However, Orr was not a party to either the 2017 action or the present case, and her appearance as counsel in both cases is not a bar to the second suit. *See S. Cent. Bell Tel. Co. v. Alabama*, 526 U.S. 160, 168 (1999) (rejecting a finding of res judicata based on common representation); *Taylor v. Sturgell*, 553 U.S. 880, 897-98 (2008) (similar). Accordingly, the defendants fail to show that they were prejudiced by the filing of the amended petition, and the chancellor did not abuse her discretion by allowing the amendment.[5]

---

[5] Although the point is not identified in their statement of issues, the defendants argue in the body of their appellate brief that the plaintiff's challenge to the subject warranty deed is barred because it was not asserted as a counterclaim in the 2017 action. This argument is procedurally barred because the defendants failed to identify it as an issue on appeal. *See, e.g.*, *Arrington v. State*, 267 So. 3d 753, 756-57 (¶10) (Miss. 2019); *Reed v. State*, 987 So. 2d 1054, 1056-57 (¶¶7-8) (Miss. Ct. App. 2008). The argument is also without merit. "In Mississippi, the doctrine of res judicata requires four identities to be present before it applies: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *Hill v. Carroll County*, 17 So. 3d 1081, 1085 (¶10) (Miss. 2009). Moreover, "[t]he proponent of a defense of res judicata . . . bears the burden of proving the defense." *McCarty v. Wood*, 249 So. 3d 425, 435 (¶33) (Miss. Ct. App. 2018), *cert. denied*, 250 So. 3d 1269 (Miss. 2018). Here, the defendants submitted relatively few documents filed in the 2017 action, so it is somewhat difficult to evaluate their res judicata argument. Nonetheless, what is in the record indicates that the 2017 action involved different parties and a different subject matter. Specifically, as discussed above, the 2017 lawsuit was filed by Martin, apparently to enjoin an attempt to oust him as the church's pastor.

**IV. Any issue regarding whether the Nonprofit was "legally established" is moot.**

¶39.    The defendants also argue that the chancellor erred by finding that the Nonprofit's alleged noncompliance with a statutory requirement related to its formation was "yet another reason" for canceling the subject warranty deed.  The defendants argue that the Nonprofit complied with all applicable statutory requirements and was lawfully established.  They also argue that this issue was outside the scope of the pleadings in the case.

¶40.    For the reasons discussed above, we conclude that the chancellor properly canceled the deed pursuant to Mississippi Code Annotated section 79-11-31(1).  Therefore, any issue related to the Nonprofit's formation is moot and need not be addressed.  *See Cucos Inc. v. McDaniel*, 938 So. 2d 238, 247 (¶26) (Miss. 2006) (The Supreme Court "dismisse[d] . . . as irrelevant" the appellant's argument "that the trial court made erroneous statements" because the trial court's judgment was correct and was affirmed on other grounds.).

**CONCLUSION**

¶41.    As stated above, neither the judgment of the chancery court nor this Court's decision addresses or resolves any ecclesiastical question, including any question of who are the true members, officers, or pastor of this church.  We simply hold that the chancellor did not clearly err by finding that the subject deed was not authorized by a resolution adopted at a duly noticed meeting attended by at least twenty percent of the church's members in good standing.  Rather, substantial evidence supports the chancellor's finding.  Therefore, the chancellor also did not err by canceling the subject deed pursuant to section 79-11-31(1).

19

¶42.   **AFFIRMED.**

   **BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**